# THE STATE ex rel. JOHN E. MARSHALL et al. v. WILLIAM H. BUGG et al.

**In Banc, December 21, 1909.**

1. **DRAINAGE DISTRICT: Widening Existing Ditches: New Organization.** Under article 4, chapter 122, Revised Statutes 1899, and amendments thereof, the only manner in which the county court can exercise the power conferred by section 8278, "to cause to be constructed, straightened, widened, altered or deepened, any ditch, drain, natural stream or water course" in a drainage district already organized, and in which the ditches already in existence are not sufficient to properly drain the lands, is to organize another drainage district embracing the same lands and giving it a different number. And that it has power to do, although the bonds issued by the district already in existence, have not been fully paid.

2. ———: ———: ———: **Questions of Fact.** The county court has authority to organize a drainage district for the purpose of widening an existing ditch or constructing a new one. It is not a question of power, it is only a question of policy. The question of the public utility of such ditch is one of fact to be determined by the county court.

3. ———: ———: ———: **Conflict of Authority.** There need be no conflict of authority between two drainage districts embracing the same lands and having the same ditches. The entire control and management of drainage districts under article 4, chapter 122, Revised Statutes 1899, are in the county court. They have no officers of their own, and are in effect but one district, though in making assessments to pay the bonds or costs they are kept separate by the county court.

4. ———: **Due Process of Law: Constitutional.** Article 4, chapter 122, Revised Statutes 1899, providing for the organization of drainage districts, does not authorize the taking of private property without due process of law, and is not unconstitutional. It provides for such notice as constitutes due process of law.

## Mandamus.

PEREMPTORY WRIT GRANTED.

*Russell & Deal* and *Ralph Wammack* for relators.

(1) The proceedings instituted by relators were not for the purpose of constructing new ditches, but as is admitted by the return and as is alleged in the petition, for the express purpose of "altering, deepening and widening" the ditches, which had been constructed, and which were known as drainage district No. 3. Meranda v. Spurlin, 100 Ind. 383; Rodgers v. Venus, 137 Ind. 224; Drebert v. Frier, 106 Ind. 512; Hardy v. McKinney, 107 Ind. 371; Denton v. Thompson, 136 Ind. 459; Evans v. West, 138 Ind. 621. To hold, when a drainage district is once organized and the improvements constructed and such improvements are found to be insufficient for the purposes for which they are intended that such improvements could not be "altered, deepened and widened" and the same land which would receive the additional benefits could not be reassessed, would simply render nugatory that part of the statute, which expressly provides for the "altering, deepening, and widening" of ditches. The entire proceeding from beginning to end is under the control of the county court and the county officers, so there can be no conflict of authority or any question raised as to the rights of drainage district No. 3, and drainage district No. 4. (2) Our county drainage law is constitutional. Mound City L. & S. Co. v. Miller, 170 Mo. 240; Egyptian Levee Co. v. Hardin, 27 Mo. 495; Columbia Bottom Levee Co. v. Meier, 39 Mo. 53; Morrison v. Morey, 146 Mo. 543; State ex rel. v. Wall, 153 Mo. 220. The notices required by the drainage law were published in strict accordance with the law as alleged in the petition and constituted "due process of law." Kansas City v. Duncan, 135 Mo. 571. (3) The mere fact that the ditches sought to be established do not reach a common outlet in Scott county could not, in any wise, deprive the county court of jurisdiction to establish the drainage system. The pleadings

disclose that all of the ditches reach a common outlet in New Madrid county which adjoins Scott county on the south, which is the direction of the natural flow of the water in the basin sought to be drained. The question whether there should have been a separate drainage district for each ditch sought to be constructed was one of expediency and economy for the county court, and it acted wisely and for the best interest of the land holders when they embraced all the land in one district.

*Boone & Lee* for respondents.

(1)  Respondents contend that under the statutes no authority is conferred on the county court to construct a group of ditches, like those petitioned for in this proceeding. Reference to Secs. 8278, et seq. p. 180, Laws 1905, will show that only one drain or watercourse is contemplated and the petition which is set out in full in relators' abstract, prays for the construction of at least three separate and distinct drains having no connection with each other. In no sense of the term can they be called lateral, side spur or branch ditches. Those terms as used by the statute evidently mean such side or branch ditches as will be necessary to convey the water into the main ditch and into a common outlet for the same basin. The petition shows on its face, that the terminations of these several ditches are at least one mile apart. Relators argue that the water finds a common outlet in Little River basin in New Madrid county, but they could, with as much force and reason, say the Mississippi river, which would be true of all the waters of Missouri. If this construction of the statute is to hold, there would be nothing to prevent the county court from bringing the whole county into one district, on the petition of five persons, living in one basin, and having no connection or community of interest with the inhabitants of the other localities, simply because the water finally finds

a common outlet in some remote stream. This was certainly never contemplated by the law-makers; on the contrary, the statute, throughout, shows that the improvement is purely local, and has reference to a single ditch and its necessary spur and side ditches. (2) The court had no authority to establish a drainage district out of the same territory embraced in one already established. Drainage District No. 3 was a corporate body. It is true it had no specified officers, exercising the usual functions of officers of a corporation, but the county court exercised those functions for the district and a most important obligation and duty of the corporation was to collect taxes and pay its debts. This same territory having been organized into a corporate body and contracted debts, issuing bonds for the same, which were a lien on all the lands in the district, how could the county court organize the same territory into another corporate body, embracing the same lands, for the same purpose, rebaptising it as a new and different district, and contract new debts which are also a lien on all the lands, without destroying District No. 3? Two bodies cannot occupy the same place at the same time. If District No. 4 legally exists, then District No. 3 is defunct. If so, how can the taxes be collected to pay off its bonds? Which bonds have the prior lien—those of No. 3 or those of No. 4? If District No. 4 can be legally established on this territory then an indefinite number of districts could be formed, at the discretion of a county court, without any regard to the prior indebtedness of the existing district. In Meranda v. Spurlin, supra, which is a leading case in that state, the old ditching district sought to be incorporated into the new district had been completed and paid for—at least there was no mention made of any outstanding indebtedness, and therefore the purposes of the first organization having been accomplished, there was no necessity for its further existence, and so far

as we can see the same state of facts existed in all the other Indiana cases cited by relator; besides, the Indiana statutes are not similar to ours in the organization of a drainage district. The cases of Tomlin v. Newcom, 38 N. W. 315, and Zabell v. Hashman, 42 N. W. 44, are almost exactly in line with this case, and in both those cases the Supreme Court of Michigan held that a new drainage district could not be formed in the same territory where one already existed.

FOX, J.—This is an original proceeding by mandamus, instituted by relators in this court, to compel the respondents, William H. Bugg and James McPheeters, who are, respectively, presiding judge and clerk of the county court of Scott county, Missouri, to sign and attest bonds of Scott county, Missouri, to the amount of one hundred thousand dollars, which were, by the county court of Scott county, Missouri, on the 16th day of December, 1907, ordered issued to pay for the construction of a system of ditches and levees in what is known as Drainage District No. 4 of Scott county, Missouri.

We do not deem it essential to reproduce in full the petition presented to this court for the relief sought, as heretofore indicated, but it will be sufficient to briefly state in substance what such petition contains.

This proceeding is predicated upon the provisions of article 4 of chapter 122, Revised Statutes 1899, and amendments adopted in 1905, Laws of 1905, p. 180. These laws, to which reference is made, fully provide for the organization of drainage districts by the county courts of the respective counties in which the lands are situate, to which the drainage district has application.

Section 8278 of the Laws of 1905, provides: ''The county court of any county in the State of Missouri shall have power at any regular session thereof, when the same shall be conducive to the public health, con-

venience or welfare, or where the same will be of public utility or·benefit, to cause to be constructed, straightened, widened, altered or deepened, any ditch, drain, natural stream, not navigable, or water-course, within said county, when the same is necessary to drain any lots, lands, public or corporate roads, or railroads. The word 'ditch' as used in this article shall be held to include a drain, water-course, or levee, or any drain, water-course, or levee hereafter constructed. The petition for any such improvement shall be held to include any side, lateral, spur or branch, ditch, drain, water-course, or levee, the lowering of any lake or any other work necessary to secure fully the object of the improvement petitioned for, whether the same is mentioned in such petition or not.''

Sections 8279 and 8280, Laws of 1905, provide for the preliminary steps necessary to be taken for the organization of the drainage district improvement which may be sought to be made.

Those sections provide:

''Sec. 8279. Before any county court shall establish any ditch, drain, water-course, or levee improvement, as provided for in this article, there shall be filed, with the clerk of the county court of such county, a petition signed by one or more landowners if the improvement be less than five miles in length, and if it be more than five miles in length, by five or more landowners, whose lands will be liable to be affected by or assessed for the construction of the same, setting forth the necessity therefor, with a general description of the proposed ditch or other improvement, the starting point, route and terminus thereof, and whether it is desired to issue bonds. There shall be filed, with such petition, a bond in the sum of not less than fifty dollars per mile, payable to the State of Missouri, signed by one or more of the petitioners, and two or more good and sufficient freehold sureties, to be approved by the county court, conditioned for the

payment of all costs and expenses if the prayer of the petition be not granted or the petition be from any cause dismissed.''

"Section 8280. When such petition is filed and such bond approved, the county court shall, if in regular session, or at a called session, appoint three resident freeholders of said county, not interested in the construction of said work and not of kin to any person interested therein, as viewers or commissioners, and also a competent civil engineer, to assist them, who shall proceed at once under the direction of an order of said court made therein certified by the clerk thereof, to view the line of the proposed ditch or improvement and report by actual view of the premises, along and adjacent thereto, whether the proposed improvement is necessary, practicable and would be of public utility or conducive to the public health, convenience or welfare, and if they find that the proposed improvement is necessary, practicable and would be of public utility or conducive to the public health, convenience or welfare, then they shall also report the best route for the proposed drain whether any portion of the same should be covered, and whether the work of constructing the same should be by allotment to the several interests, or be let by contract without allotment. They shall report their finding, in writing, to the county court at a time fixed by said court, or, if no time be fixed, at the next regular term thereof, and the said court shall cause the same to be entered on its records. All viewers and engineers, before entering upon the discharge of their duties as such, shall take and subscribe an oath to faithfully and impartially discharge their duties as such viewers and engineer, and to make, to the county court, a true and correct report of the work done by them.''

The petition presented to the county court, it is alleged in the petition upon this application, fully

conforms to the requirements of the sections of the statute herein indicated.

Section 8281, on the subject of drainage districts, makes provision that, after the report of the viewers, appointed under the provisions of section 8280, is filed, a time should be fixed by the county court for a hearing upon the petition and report of the viewers, and for the giving of notice of such hearing.

Section 8282, treating of this same subject, substantially provides that if, at the hearing provided for, as above stated, the county court shall find against the improvement, it shall dismiss the petition and the proceedings at the cost of the petitioners, and section 8283 provides that, if the court shall find in favor of making the improvement, the land which will be thereby benefited shall constitute a drainage district which shall be designated by number.

Section 8284 provides that, if the county court shall find that the proposed ditch, or other improvement, is necessary for sanitary or agricultural purposes, or would be a public utility, or conducive to the public health, convenience or welfare, it shall cause to be entered upon the record of the court such finding.

Following this, provision is made for the appointment of a civil engineer and three viewers who are required to take the oath as prescribed by one of the sections of this statute, and then to go upon the land where the ditches are to be located, and, if only the general route of such ditches has been located, then it shall be the duty of the engineer and the three viewers to establish the precise location of such ditches along lines where, in their judgment, the proposed improvement will prove most efficient.

Other provisions are made for the surveying and leveling of the line and for the determination of the dimensions and form of the proposed ditches, levee, or other improvement, and what disposition shall be made of excavated earth.

It is also further provided that they shall make a return and schedule of all lands, and all public and corporate roads or railroads that will be benefited, damaged or condemned by or for the improvement, and the damage or benefit to each tract of forty acres, or less, and to make separate estimates of the cost of location and construction and apportion the same to each tract in proportion to the benefits or damages that may result to each.

There are other provisions in this section concerning the filing of plats indicating the nature and character of the work done by the civil engineer and the viewers in the discharge of their duties provided for by this section, and finally, they are required to make a report of their acts and doings concerning the establishment of the ditches.

Section 8287 further provides that the county clerk, upon the filing of this last report mentioned, shall immediately set the hearing of the same for some day at the next regular term of the county court. It also provides that the clerk shall issue, in the name of the State, a notice, directed by name, to every person returned by the engineer and viewers as the owner of any lot or parcel of land affected by the proposed improvement or of any interest therein, and shall also direct a notice to all others, who it may be in any manner ascertained own such lands, or any part thereof, or any interest therein. Other provisions are made respecting this notice, concerning the form of it, as to indicating to the person notified the description of the parcels of land that will be affected by the proposed improvement, and it is also provided that this notice shall be published in four issues of some weekly newspaper published in the county.

Section 8288 provides for the hearing by the county court upon the report of the engineer and viewers, as heretofore mentioned. If the county court

224 Sup—35

finds that due notice has been given, it shall then ex-
amine the report of the engineer and viewers, and, if
it appears to the court that the estimates of the cost
of location and construction, and all damages and ben-
efits to each tract, as reported, are correct, and if the
apportionment of the cost of location and construc-
tion is in proportion to the benefits and damages to
each tract, in all things fair and just, it shall approve
and confirm the same.

Section 8289 fully provides for the assessment of
all lands lying within the district, and benefited by the
public ditches or drains, in proportion to the benefits
to such land by reason of such improvement.

There are numerous other provisions treating of
the subject of ditch or drainage improvements con-
cerning, of course, after the final orders are made or-
ganizing the district, the letting of the contracts for
the performance of the work and labor in making the
improvement, in accordance with the plans as pointed
out and designated in the orders of the county court.
However, for the purposes of this case, it is unneces-
sary to quote the sections of the statute concerning
those subjects.

Section 8201a makes provision for the county
court, if prayed for in the petition for the improve-
ment to be made, to issue bonds in denominations of
not less than one hundred dollars, and sell the same
to meet the expenses of locating and constructing any
ditch or improvement under the provisions of this ar-
ticle, which bonds shall mature at annual intervals,
commencing after a period of two years, for not ex-
ceeding twenty years, and to be payable semi-annually
at the office of the county treasurer. It is also provided
by that section that such bonds shall be sold by the
county treasurer, without expense to the county, to the
highest and best bidder, after the county court shall
have fixed the time and place of such sale and given
notice thereof by publication in some weekly news-

paper published in the county, but in no case shall any
such bond be sold for less than par, and they shall show
upon their face the purpose for which they are issued,
and shall be made payable out of moneys derived from
assessments on the lands within the improvement dis-
trict, as provided by section 8289.

The petition presented to the county court, as well
as the one presented in this proceeding, sets forth in
detail every preliminary step provided for by the stat-
utes concerning the organization of drainage districts,
and all the allegations contained in the petition of re-
lators are admitted, and it is further admitted and con-
ceded that all proceedings necessary to establish a
drainage district under the provisions of article 4,
chapter 122, Revised Statutes 1899, as amended by
the Laws of 1905, were had, as alleged by relators, and
entered of record of the county court of Scott county,
Missouri, and that said drainage district so established
was numbered as Drainage District No. 4.

It further appears from the allegations in the pe-
tition presented to this court that contracts were let
for the performance of the work in making the im-
provements in said drainage district, and proper bonds
executed for the faithful performance of such work
by the contractors, and that the county court of Scott
county, on the 16th day of November, 1907, it being
the fourth day of the November adjourned term, ap-
proved said contracts and bonds, and caused the same
to be spread upon the records, and caused notice
thereof to be given to the several contractors.

It also appears from the petition that the county
court, after making the said contracts, and after the
working sections of the improvements had been let,
and after the cost of location and construction, and all
compensation and damages had been ascertained, pro-
ceeded to determine and did determine in what num-
ber of installments the assessments and the interest

thereon, as confirmed by the court, should be paid, and the rate of interest said assessments should bear.

It is further shown by the petition presented by the relators, by which it is sought to have this court issue its writ of mandamus compelling the execution of the bonds, that the relators in seeking to have suitable and proper orders made for the location and establishment of the ditches, as well as the organization of the drainage district sought by that proceeding, fully set forth in their petition to the county court the nature and character of the ditches sought to be located, the beginning point, as well as their course and outlet. And, in addition to this, it was alleged in such petition to the county court that the contemplated improvement sought by that proceeding, is the widening, altering and deepening of a system of ditches heretofore constructed, and known as Drainage District No. 3, Scott county, Missouri, none of which ditches existing in Drainage District No. 3 are navigable or natural streams.

Finally, it is alleged in such petition that the county court of Scott county, in accordance with the prayer of the petition of relators, ordered that bonds to the amount of one hundred thousand dollars be issued in denominations of one thousand dollars each, and that said bonds be sold to meet the expenses of locating and constructing the ditches and other improvements prayed for and established by said court. It is further ordered that said bonds be dated March 1, 1908, maturing at annual intervals, commencing after a period of two years and continuing to run for not exceeding twenty years, and to bear interest not to exceed six per cent per annum, and payable semi-annually at the office of the county treasurer; that said court ordered said bonds to be sold by the county treasurer, without expense to the county, to the highest and best bidder, and that said bonds are to be sold for not less than par; that said bonds, when so issued,

should show upon their face the purpose for which they are issued, and made payable out of moneys derived from the assessments on the lands affected by the proposed improvements, and none other.

The petition of relators finally concludes with the allegation that the county court of Scott county prescribed in its order the form of the bond, and directed that the same be signed by the presiding judge of the county court and attested by the county clerk. Following this averment, it is alleged that said presiding judge of the county court, William H. Bugg, and county clerk, James McPheeters, though requested so to do, refused to sign and attest said bonds.

Respondents waived the issuance of the alternative writ and filed their return thereto, which is as follows:

"Now come the respondents in the above entitled cause and waive the issuance of the alternative writ of mandamus herein and enter their appearance, and for their return to said writ, say:

"First. That they admit all of the allegations contained in the petition of relators, and admit that all the proceedings necessary to establish a drainage district under the provisions of Article four, Chapter 122, of the Revised Statutes 1899, as amended by the Laws 1905, were had as alleged by relators and entered of record of the county court of Scott county, Missouri, and that said drainage district so established was numbered as Drainage District No. 4.

"Second. Further answering, respondents say that said Drainage District No. 4 and the land embraced therein is the same land embraced in Drainage District No. 3 heretofore organized by the county court, and which is still a drainage district, and has outstanding obligations in the nature of assessments against the lands in said district, and that bonds issued by said Scott county for the purpose of raising money to construct ditches in Drainage District No. 3 are still

outstanding and unpaid, and that assessments are being annually collected from the lands embraced in said Drainage District No. 3, being the same lands embraced in Drainage District No. 4, to retire and cancel said bonds as they mature.

"That the proceedings alleged in the petition of relators were instituted for the express purpose of widening, altering and deepening the ditches established by Drainage District No. 3, and that the bonds sought to be issued are to be sold for the purpose of raising funds to pay for the proposed improvements, and that said bonds are to be paid from assessments levied against the same lands which have heretofore and are now being assessed for the purpose of paying bonds heretofore issued by said Scott county to pay for work and ditches constructed for Drainage District No. 3.

"Respondents further aver that the ditches described in relator's petition do not reach a common outlet in Scott county, Missouri, but do reach a common outlet in New Madrid county, Missouri, which lies immediately south of and adjoining Scott county, and in the direction of the natural flow of the water in the basin sought to be drained, and that the petition filed by relators in the county court of Scott county, Missouri, for the establishment of said drainage district, discloses that the drainage system contemplated is in no sense a combined system of drainage, and that four of said ditches sought to be established run parallel one with the other, serving apparently an independent basin and separated by distinct watersheds.

"Further answering, they say that the county court had no jurisdiction to establish said Drainage District No. 4 over the territory described, and to levy taxes for the payment of bonds or indebtedness necessary to the expense of the proposed improvements, for that the said territory is already incorporated into a

drainage district for the same purpose and cannot again be incorporated for the same purpose over the same territory.

"They further say, that article four of chapter 122, Revised Statutes 1899, as amended by the Act of 1905, is repugnant to the 14th amendment to the Constitution of the United States, and to sections 30 and 32, article 2, of the Constitution of Missouri, and the proceedings of the county court authorizing the issue of the bonds in question are therefore null and void in that it is thereby sought to take the property of the landowners of said district without due process of law.

"Wherefore, the premises considered, respondents aver that said county court was wholly without jurisdiction in the premises to make and enter the several orders of record for the establishment of Drainage District No. 4, as alleged in relators' petition, and ask that they be discharged from further answering and go hence without day and recover their costs in this behalf expended."

To this return relators filed a demurrer in which it is substantially stated that the matters and things alleged in the return constitute no defense to the action of relators, and pray for judgment upon their demurrer, and for all other relief.

This sufficiently indicates the record in this cause to enable us to determine the legal propositions raised upon such record. There is nothing left to be done except to give expression to our conclusions growing out of the record now before us.

## OPINION.

### I.

It is insisted by respondents that under the statutes covering the subject of drainage districts no authority or justification is conferred on the county court

of Scott county to construct a group of ditches like those petitioned for in this proceeding.

Directing our attention to this insistence it is essential first to indicate the nature and character of the proceedings before the county court, as well as the purposes sought by it. Manifestly the relators in that proceeding sought to have the county court of Scott county exercise the power conferred upon it by the provisions of section 8278. That section, as heretofore indicated, clearly gives the county court power, at any regular session, to cause to be constructed, straightened, widened, altered or deepened any ditch, drain, natural stream not navigable, or water course within said county, when the same is necessary to drain any lots, lands, public or corporate roads, or railroads. That is, the county court has the right to exercise such power when it shall be conducive to the public health, convenience or welfare, or where the same will be a public utility or benefit.

The lawmaking power, a number of years ago, recognized the necessity of legislation which would facilitate the drainage of certain wet lands located in different portions of the State. Doubtless they felt that legislation of that character would subserve a great public purpose, that is, that the drainage of such lands would be conducive to the public health, convenience and welfare of the people; in fact, that such drainage would be of public utility and a public benefit. It was a subject that was difficult to cover by legislation in order to obtain the best results, hence, it became necessary in course of time to make amendments to the statutes upon that subject in order to meet certain features respecting the drainage of wet lands that did not present themselves to the minds of the members of the Legislature upon that subject when approaching legislation upon it in the first instance. Hence, we find in the revision of 1899 a new section, 8278, which conferred upon the county court power,

not only to construct, but as well to straighten, widen, alter or deepen any ditch, drain or watercourse within said county, when the same was necessary to drain any lots, lands, public or corporate roads or railroads. Doubtless experience and observation had demonstrated that frequently ditches constructed were not of sufficient width or depth to accomplish the purpose of completely draining the land which was sought by the construction of such ditch, hence, the provisions of section 8278, in order to fully accomplish the purposes sought to be accomplished by the drainage laws of this State, embraced provision for the straightening, widening, altering or deepening of any drainage ditch that may have theretofore been constructed. This new section in the statutes of 1899 was, in some respects, amended by the Legislature of 1905.

In our opinion, the only manner in which the county court could exercise the power conferred by the provisions of section 8278, was to pursue the course adopted in this case.

Section 8278 which confers the power to alter or deepen any ditch or drain that has heretofore been constructed, contemplates a proceeding of the same nature and character, and under the same section of the statute as is contemplated where it is sought for the first time to construct a drainage ditch. In other words, the same section which confers the power contemplates the organization of a drainage district in order to exercise such power and accomplish the results contemplated by the drainage law. That section, after providing for the altering, widening and deepening of any ditch, drain or watercourse, then provides that: "The word 'ditch,' as used in this article, shall be held to include a drain, watercourse or levee, or any drain, watercourse or levee hereafter constructed. The petition for any such improvement shall be held to include any side, lateral, spur or branch, ditch, drain, watercourse, or levee, the lowering of any lake or any

other work necessary to secure fully the object of the improvement petitioned for, whether the same is mentioned in such petition or not.''

It will be observed that that section makes reference to the petition for any such improvement. Manifestly, the improvement referred to embraces the changes and alterations in the ditches provided for in the first subdivision of that section. The petition mentioned in section 8278 clearly contemplates the petition provided for by the provisions of section 8279. If it had reference to any other petition applicable, alone, to the changes and alterations in a ditch already constructed, certainly it would make some other provision as to what action was to be taken upon a petition of that character.

In our opinion, the petition for the improvement, to which reference is made in section 8278, that is to say, for the widening, altering or deepening of any ditch which had already been constructed, contemplates simply the petition to be filed under the provisions of a subsequent section, and the same action and course must be pursued upon that petition as is pursued, if, for the first time, a petition was presented to organize a drainage district for the purpose of constructing drains and ditches in such district.

We repeat that this legislation upon the subject of drainage of wet or swamp lands, located in different portions of this State, had in view a great public purpose, that is, of accomplishing results which would be conducive to the public health as well as to the convenience and welfare of the people of this State. Therefore, the provisions enacted by the lawmakers of this State for the purpose of accomplishing the results as indicated, should not be confined, by a technical construction, within an extremely narrow compass. Such construction should be placed upon provisions of that character as will be in harmony with the intent of the lawmaking power, and which will

facilitate the accomplishment of the purposes indicated by the legislative enactment upon the subject in hand.

Section 8281 (Laws 1905) makes provision at the very inception of the proceeding before the county court to organize the drainage district, for fixing the time for the hearing and report of the viewers, which is provided for by the previous sections, and for the giving of notice by publication to those interested in such proceeding.

Section 8284 further provides that if upon such hearing the county court shall find that the proposed ditch or other improvement is necessary for sanitary or agricultural purposes, or would be of public utility or conducive to the public health, convenience or welfare, it shall cause to be entered upon the record of the court such finding. Then follows a provision for again appointing a civil engineer and three viewers, whose duty it is to go upon the line of the ditches in the district as pointed out in the order of the county court, and permanently locate the route of the ditches in the drainage district and determine the dimensions and form of the proposed ditch, levee or other improvement and what disposition shall be made of the excavated earth, and to estimate the number of cubic yards of earth or other substance to be removed and the cost per cubic yard for each section of one hundred feet, and for the whole work, and to make a report, profile and plat of the same. It will be observed that they are also required to make and return to the county court a schedule of all lots and lands and of the public and corporate roads or railroads that will be benefited, damaged or condemned by or for the improvement, and the damage or benefit to each tract of forty acres or less, and make separate estimates of the cost of location and construction, and apportion the same to each tract in proportion to the benefits or damages that may result to each. Then follows the provision which requires the engineer and viewers to embrace in their

report in detail all the necessary preliminary steps to be taken before the contract is let for the construction of the work.

Again, by the provisions of section 8287 it is provided that upon the filing of this last report mentioned of the viewers, the county court shall immediately set hearing of the same for some day of the next regular term of the county court. This section also makes ample provision for the giving of notice to every person who may in any way be interested in such hearing.

Manifestly, the county court under the provisions of the various sections of the statute to which we have made reference, had jurisdiction of the subject-matter, and, under the provisions of the section last cited, providing for the different hearings upon the reports of the viewers concerning the matters involved in the proceeding, and the notice to all persons interested, provided for by said sections, and it appearing from the allegations in the petition now before us that the notice provided for in the proceedings before the county court was given in accordance with the provisions of the statute, we are of the opinion that it is clear the court had jurisdiction, not only of the subject-matter, but as well of the persons who were interested in such proceeding.

We see no necessity for further discussing this proposition. If the provisions of section 8278 conferring upon the county court power to construct, straighten, widen, alter or deepen any ditch or drain, are to be treated as having any force or vitality, then we see no escape from the conclusion as to how such power, which is clearly conferred by the provisions of that section, in connection with other sections of the statute, can in any way be exercised, except by the method adopted by the proceeding in the county court of Scott county.

## II.

It is next earnestly insisted on the part of the respondents that the county court of Scott county had no authority to establish a drainage district out of the same territory embraced in one already established.

In treating of this proposition it must be conceded that the proceeding instituted by the relators was not for the purpose of constructing new ditches, but, as is admitted by the return and as is alleged in the petition, for the express purpose of altering, deepening and widening the ditches which had been constructed and which were known as Drainage District No. 3. In other words, District No. 3 embraced the same territory that is sought to be embraced by the organization of District No. 4, which is involved in this proceeding.

Manifestly, if it is to be held by this court that when a drainage district is once organized and the improvements constructed, and such improvements are found to be insufficient for the purposes for which they were intended, that such improvements could not be altered, deepened or widened, and the same land which would receive the additional benefits could not be reassessed therefor, it would not only nullify the provisions of section 8278, which expressly provides for altering, deepening and widening of ditches, but as well defeat to a very large extent the purposes as heretofore indicated which are sought to be accomplished by the legislative enactments upon the subject of drainage.

The proposition with which we are confronted has never been in judgment before this court or any of the appellate courts of this State, but substantially the same question upon statutes of similar import was presented for consideration to the Supreme Court of one of our sister states, that is, in the case of Meranda v. Spurlin, 100 Ind. 380. The proposition in that case involved the question as to the authority to estab-

lish a drain along and upon a drain formerly established by the board of commissioners of the county in which the proceeding to establish the drain was instituted. In response to the insistence in that case that there was no authority to establish the drain along and upon the drain formerly established by the board of commissioners, the court, speaking through the chief justice, thus gave answer to the contention: "We know of no constitutional or statutory inhibition against locating and constructing one of these drains along and upon a drain formerly constructed pursuant to an order and judgment of the board of commissioners. These latter drains are constructed by the public for public purposes, and while the landowners are assessed according to benefits derived, they do not thereby acquire vested rights that will prevent the location and construction of another drain upon the same line. The power is analogous to the power of cities to reconstruct streets, except in the latter case the statute provides that the damages caused by the improvement shall first be paid to the landowner who was assessed for a former improvement. [City of Kokomo v. Mahan, *ante,* p. 242.] To hold the contrary would be to greatly embarrass and cripple the public authorities and individuals in the proper drainage of wet lands."

The altering, widening and deepening of the ditches as constructed in District No. 3 by the organization of a new district under the provisions of the statute, or in other words, the location and construction of a second drain, as was expressly ruled in the Indiana case, is not a question of power, but rather one of policy. So we say in the case now before us, that the power to widen, alter and deepen the ditches as constructed in District No. 3, is expressly conferred by the provisions of the statute, and the question as to whether the organization of District No. 4, for the purpose of constructing the second drain along the same lines as those constructed in District No. 3, was of such public bene-

fit as to warrant and justify the construction of a second drain, were all matters to be determined by the county court upon the different hearings, after notice given as provided for in the provisions of the statute to which reference has heretofore been made.

It must be conceded, as was ruled in the Indiana case, that some sufficient reason should exist for the construction of another drain upon the same line by the order of the county court. The question of the public utility of such second drain, as well as the question as to whether or not the landowners will be benefited by, or should be assessed for the construction of the second drain, contemplated by the organization of District No. 4, were, as suggested in Meranda v. Spurlin et al., all questions of fact to be determined by the county court upon the evidence introduced at the hearings provided for by the statute.

The rules of law announced in Meranda v. Spurlin, supra, met with unqualified approval in the subsequent cases decided by the Supreme Court of that State in which this proposition was involved. [Rogers v. Venis, 137 Ind. l. c. 224; Drebert v. Trier, 106 Ind. l. c. 512; Hardy v. McKinney, 107 Ind. l. c. 371; Denton v. Thompson, 136 Ind. l. c. 459; Evans v. West, 138 Ind. 621.]

It is argued by learned counsel for respondents that there might be a conflict of authority as to the rights between these two districts, District No. 3 and District No. 4. Upon that question we deem it sufficient to say that it must not be overlooked that the entire proceeding in organizing the district from beginning to end, is under the control of the county court and the county officers. While it is true the territory embraced in these two districts form and are designated as "districts," but they are unlike other corporations in this, that they have no officers whatever, but are wholly under the control of the county court. Manifestly, under the supervision of the county court,

which, presumably, is acting in harmony for the best interests of the people of the county, there can be no conflict of authority. It is not uncommon in the treatment of complicated legal propositions by the courts of the country, to find in many instances, the wisest as well as the most correct conclusions are reached upon such propositions by the application of plain, common-sense rules in the treatment of the subject in hand.

Recurring now to these two apparent separate and distinct districts, that is, No. 3 and No. 4, while it is true they are designated on the records of the county court as two districts, they are both under the supervision of the county court, and in fact, are practically but one district. Clearly the last proceeding for the organization of District No. 4 was instituted for the sole purpose of increasing the capacity of the ditches formerly constructed in District No. 3 and reassessing the lands benefited by such increase of the capacity of the former ditches. The benefits to be derived from altering, widening and deepening the ditches in District No. 3, and increasing the capacity of such ditches could only be acquired by pursuing the course pointed out by the statute, that is, by the organization of a drainage district for that purpose; and the designation of these districts as "No. 3" and "No. 4," is only essential to distinguish the assessment made for the altering, deepening and widening of such district from the assessment made for the purpose of constructing the ditches in the first instance.

It is further suggested by respondents that there might be some conflict in the rights of the bondholders of District No. 3 and District No. 4. Manifestly, that question was for the county court in determining the propriety of the organization of District No. 4. It will be noted that the bonds issued for the construction of the improvements in these districts are issued, not by the districts, but are issued by the order of the county court, directing the president of the county court to

sign the same and his signature attested by the county clerk, together with the seal of the county thereon, which bonds show upon their face the purposes for which they are issued, and are made payable out of the assessment against the lands benefited.

We apprehend that, after the different hearings by the county court upon the reports necessary to be made preliminary to the organization of these drainage districts, the county court, in the discharge of its duties, would not consent to the issuance of bonds which could not be paid out of the revenue derived from the assessment of the benefits to the lands embraced in the drainage district. We have no apprehension of any losses to the bondholders; they are usually able to protect themselves, and, at last, the issuance of the bonds for the location and construction of the ditches in District No. 4 is nothing more than the incurring of a further liability by reason of the additional improvements and benefits resulting therefrom to the lands embraced in the territory of such district. Doubtless the persons or corporations to whom it might be sought to make a sale of the bonds, would be fully apprised of the conditions surrounding the issuance of these bonds before an investment was made for their purchase; however, we take it, the questions with which we are confronted in this proceeding are as to the regularity of the proceedings and the power and authority to issue the bonds, under the provisions of the statute, and not to settle any imaginary conflicts in the rights of the bondholders of the two districts.

Our attention upon this proposition is directed to the case of Tomlin v. Newcomb, 70 Mich. 358. An examination of that case demonstrates that it furnishes but little support to the insistence of counsel upon the question now under consideration. In that case it will be observed that the Michigan drainage law of 1885 provided for a township drain commissioner, and

the proceeding in judgment before the court was a case wherein the township commissioner was, upon his own motion, seeking to establish a township drain upon the same line, through the same lands in which a drain had been established, known as the Fairfax County Drain. The county drain had been located, established and constructed by the county drain commissioner, and the court held that the second drain sought by the township commissioner could not be made. It is also made manifest by that decision that the drainage law of Michigan was widely different from the provisions of the statute under which the proceedings were had in the case at bar. It was said by the court in that case, that "the proceeding, stated in the bill of complaint, and sought to be enjoined, is not one to vacate the old drain, nor to declare it abandoned, nor to relocate or extend the line of a drain, nor to change, widen, or deepen the water-course already established. A drain cannot be relocated or re-established on the line of another until the first has been either vacated or abandoned. There is no statute authorizing either the township or county drain commissioner to do this." The conclusions reached in that case were predicated upon the provisions of the Michigan statute which failed to confer the power to alter, widen or deepen a ditch which had already been previously constructed. That case, in our opinion, in no way conflicts with the conclusions reached in the case at bar upon the express provisions of the drainage law statutes applicable to this State.

In Zabel v. Harshman, 68 Mich. 273, a similar ruling was made to the last case cited. In that case the township drain commissioner was seeking to establish a township drain along the line of an old county drain, and was proceeding upon the theory that the county drain had never been legally established, that is to say, he was proceeding as though there was no drain at all. Those cases by the Supreme Court of Michigan

in effect hold that a township commissioner has no jurisdiction to locate a township drain on the line of a drain laid by the county drain commissioner, unless such first drain was legally vacated or abandoned. . The rules announced in those cases, as applicable to the Michigan drainage law, did not in any way, as heretofore stated, conflict with the conclusions reached in the case at bar under the provisions of our statute, where full authority is given for the proceeding as was instituted in this case.

We see no reason to further discuss this proposition. The proceedings for the organization of District No. 4, for the purpose of making the improvements involved in this litigation, were all heard before the county court at the respective hearings provided for by the statute, after due notice given to all persons who were in any way interested in such proceedings. As heretofore stated, the county court had jurisdiction of the subject-matter as well as of the persons interested in such proceedings. It ordered the organization of the district for the construction of the improvements prayed for in the petition, and, in our opinion, it was a valid exercise of the power conferred upon such court by the provisions of the statute upon the subject of drainage of lands in this State.

## III.

The final insistence of counsel for respondents is that the drainage law is unconstitutional, for the reason that it is violative of that provision of the Constitution which prohibits the taking of property without due process of law.

We are unable to give our assent to the contention of respondents upon this proposition. The general features of the drainage law, as it now exists, have been in judgment before this court, and the constitutionality of such law was fully maintained. [Mound City L. & S. Co. v. Miller, 170 Mo. 240; Egyptian Levee

Co. v. Hardin, 27 Mo. 495; Columbia Bottom Levee Co. v. Meier, 39 Mo. 53; Morrison v. Morey, 146 Mo. 543; State ex rel. v. Wall, 153 Mo. l. c. 220.]

In the proceeding to organize Drainage District No. 4 there was a compliance with the provisions of the statute respecting the giving of notice, and the notices required by the statute were published in strict accordance with the provisions of such statute, and this, in our opinion, as was expressly ruled in Kansas City v. Duncan, 135 Mo. 571, constituted due process of law.

Entertaining the views as herein indicated, it results in the conclusion that the alternative writ of mandamus should be made peremptory, and the peremptory writ is ordered issued.

All concur.