A. C. SIBBETT et al. v. LUTHER STEELE et al., ROBERT E. BLOCK et al., Appellants.

In Banc, February 9, 1912.

1. DRAINAGE DISTRICT: Lands Already Included in Existing District. The right to incorporate a drainage district under article 1 of chapter 41, Revised Statutes 1909, by proceedings in the circuit court, is not limited by the statutes to lands not included in a district already established. The fact that a drainage and levee district already existent, limited in its scope and plan of work to the rebuilding and raising the height of a levee along the Mississippi river, embraces much of the land that is sought to be included in the proposed drainage district, is no reason for denying incorporation to the proposed district.

2. ————: ————: Extending Scope of Power: Sec. 5573: New Order Necessary. The enlarged powers given by section 5573, Article 3, Revised Statutes 1909, relate to work already done under the. provisions of article .1, and look to its greater efficiency, and .not to a new scope and plan of work. In any

Sibbett v. Steele.

event such additional powers beyond the scope and plan of its organization can be exercised by an existing district only after application to and order by the county court.

3. ————: **Petitioners: Mortgagees.** For the purpose of instituting a proceeding in the circuit court under article 1, chapter 41, Revised Statutes 1909, to organize a drainage district, the mortgagees of mortgaged lands are not necessary signers. The "owners" who are to institute the proceedings, elect commissioners and otherwise act, are the title owners of the land, and under section 5507 each such owner is entitled to one vote for each acre owned by him.

4. ————: **Petition Signed by Another.** Owners of land in the drainage district whose names are signed to the articles of association by another, and who appear by attorney throughout the proceedings, without objection, are in court, and are bound by a judgment incorporating the district.

5. ————: **Benefit: Question of Fact.** Whether the lands of objectors will be benefited, and whether they are properly included within the drainage district, are questions of fact, to be tried out before the trial court upon testimony, and if that testimony is substantial, its findings will not be disturbed on appeal.

Appeal from Lincoln Circuit Court.—*Hon. B. H. Dyer,* Judge.

AFFIRMED.

*Chas. Martin* and *R. H. Norton* for appellants.

(1) The Legislature never intended that two organizations having equal powers should be incorporated to cover the same territory, especially so when conflicts might arise with no one superior authority to harmonize them. It will be seen by section 5496, article 1, chapter 41, that the purpose of that article is to have such lands reclaimed and protected from the effects of the water by drainage or otherwise, and by section 5513 that the supervisors have power to construct and maintain ditches, canals, levees, etc. The supervisors appointed under this proceeding may and can assume and exercise the same authority in building new levees and maintaining the levees already built as given to the commissioners of the King's Lake

Drainage and Levee District. In other words, to usurp all the functions and duties of the King's Lake Drainage and Levee District commissioners. That conflicts may arise and will arise between these two bodies having the same purpose to accomplish and the same duties to perform is apparent. Section 5496, article 1, chapter 41, under which this proceeding was commenced, provides that "a majority in interest of the owners," etc., may file their petition in the circuit court. The jurisdictional fact that must appear is that a "majority in interest" have signed the petition and our contention is that "a majority in interest" of the owners does not mean the greater number of acres as contended for by these petitioners, but the greater value. "Interest" in practice means concern, benefit, advantage, such relation to the subject matter in issue as creates a liability to pecuniary gain or loss. 1 Bouvier's Law Dictionary, 737; Fitch v. Bates, 2 Barb. 471; McKee v. Scobee, 80 Ky. 124; State ex rel. v. McKellop, 40 Mo. 184; State ex rel. v. Tuld, 37 Mo. App. 97; Foreman v. Town of Marraina, 43 Ark. 329; State v. Sutton, 74 Vt. 12; Adams v. Minor, 121 Cal. 372. "Interest" in land means estate in land. Williams v. Santa Clara, 66 Cal. 193; Hurst v. Hurst, 7 W. Va. 289; City of New York v. Stone, 20 Wend. 142. "Interest" in suit means monetary interest. McGrath v. People, 100 Ill. 465. A "majority in interest of the owners" must therefore mean owners having a greater estate or pecuniary interest in the lands. The Legislature of 1911 seems to have so construed it by repealing section 5496 and enacting a new section of the same number, in which "a majority in acreage" was substituted for "a majority in interest of the owners." Laws 1911, pp. 205 and 206. The majority required by section 5496, in order to qualify the petitioners and give the court jurisdiction is not in acreage or in number of signers, but in interest, and in this the petitioners have failed. The statute

in such cases must be complied with to give jurisdiction. Drainage District v. Campbell, 154 Mo. 151; City of Tarkio v. Clark, 186 Mo. 285; Eaton v. County, 8 Mo. App. 177; Same case, 76 Mo. 492. (2) Section 5497 provides that owners who have not signed the petition nor entered their appearance shall be served with notice or summons, and owners include mortgagees, or *cestuis que trustent.* Longwell v. Kansas City, 69 Mo. App. 177; Blevins v. Smith, 104 Mo. 183. A mortgagee or *cestui que trust* is a proper and necessary party. Corrigan v. Bell, 73 Mo. 53; Keating v. Craig, 73 Mo. 507; Stafford v. Fizer, 82 Mo. 393; Williams v. Hudson, 93 Mo. 528; Giralden v. Howard, 103 Mo. 45; Real Estate Co. v. Haseltine, 53 Mo. App. 318.

*F. L. Schofield* and *Avery, Young, Dudley & Killam* for respondents.

(1) a. Even under section 5496, of the statutes, as it read at the time of the commencement of this proceeding, requiring that the articles of association be signed by a "majority in interest of the owners," it is clear, reading the whole article together, that the unit for measuring the "interest" was the acre and not the dollar. The "majority in interest" required by section 5496 to commence the proceeding to incorporate must refer to the same majority of those interested who are to control and manage the affairs of the corporation when organized, and section 5507 provides that, in the election of supervisors, "each owner shall be entitled to one vote for every acre owned by him in such district." Unless both sections be read together and the "majority in interest" be construed to mean "majority in acreage," we will be driven to a different unit of measure to determine substantially the same rights of the same landowners in the same statutory proceeding. (b) The statute concerns itself

with areas rather than with values. Johnson v. Detrick, 152 Mo. 243. c. But the proper construction of the phrase "a majority in interest," employed in the old statute, was effectually removed and the acre unit expressly adopted by legislative enactment anterior to the final hearing and judgment in this case. Laws 1911, p. 206, sec. 4596. And by another section of this act, all its provisions were expressly made applicable to proceedings pending at the time the article went into effect. Laws 1911, p. 221, sec. 2. (2) There was no necessity, even under the statute prior to the 1911 amendments, of making the mortgagees parties to the proceeding. a. Under our system of judical administration the common-law conception of carving out of the free-hold estate an equity of redemption and regarding the tenure as divided, has long since been abandoned, particularly in this State. The mortgagor in possession is uniformly regarded as the legal "owner," the mortgage being considered merely as a security for the debt. Jones on Mortgages, sec. 11, et seq; Kennett v. Plummer, 28 Mo. 142; Pence v. Gabbert's Admr., 70 Mo. App. 201; Dickerson v. Bridges, 147 Mo. 235; Benton Land Co. v. Zeitler, 182 Mo. 251. And even in cases of condemnation of lands for public roads, the mortgagee is not a necessary party. Warren v. Gibson, 40 Mo. App. 467. b. But whatever view of this subject might have been entertained prior to the amendments of 1911, the question was set at rest by the Legislature in the amendment to section 5496. Laws 1911, p. 206, sec. 5496a; p. 221, sec. 2. (3) The statute does not require the personal signature of the petitioning landowners to the articles of association. And courts will not, by a strained or rigorous construction, require more than the statute requires. Porter v. Paving Co., 214 Mo. 12; Laws 1911, p. 224, sec. 4763h; R. S. 1909, sec. 1728; Ring v. Vogel Co., 46 Mo. App. 374; Vallie v. Picton, 16 Mo. App. 178. (4) The earlier organization of the

King's Lake Drainage and Levee District could not deprive the circuit court of jurisdiction which section 4596 confers upon it without reservation or exception. Laws 1911, p. 207, sec. 5499; Drainage District v. Railroad, 236 Mo. 94; State ex rel. v. Bugg, 224 Mo. 537; Southland & Imp. Co. v. Kansas City, 172 Mo. 523. King's Lake District was organized, as the record will show, for the sole purpose of protection from overflows of the Mississippi river. Its only work was the construction of a levee. All that this district could now do, even under section 5575 (which was enacted in 1909), would be to "repair," "reconstruct," "strengthen," "raise to a greater height," or "otherwise improve," this levee, except that it might also "provide any other additional means in order to render same (that is, said levee) safe, sufficient and effective to protect permanently from overflow from high water and from seepage" said lands.

FERRISS, J.—This proceeding, in the circuit court of Lincoln county, is under article 1, chapter 41, Revised Statutes 1909, to incorporate a drainage district. The territory comprising the proposed drainage district is all that part of the Mississippi bottom lying between the river and Prairie Slough, on the east, and the bluff or hill land, on the west, and from a point in Pike county two miles north of the county line, south through township 51, range 2 east, and to the south line of survey 1724, in township 50, range 2 east, in Lincoln county. It is about three and a half miles wide, from east to west, and eleven or twelve miles long from north to south.

King's Lake Drainage and Levee District was incorporated by order of the county court of Lincoln county, in 1904, under the Act of 1893, now article 3, chapter 41, Revised Statutes 1909, and covers all of the territory of the proposed drainage district, except a small portion of the south end. Commissioners ap-

pointed by the county court under the King's Lake
Drainage and Levee District incorporation are now,
and have been since 1905, in charge and control of the
territory of that district for the purpose of that in-
corporation.

In the order of the county court incorporating the
King's Lake Drainage and Levee District, the scope
and plan of the work then proposed was limited to the
rebuilding and extending of the old levee.

This appeal is by certain objecting landowners to
the order of the circuit court declaring and decreeing
said drainage district a public corporation of the State,
under and by the name ''Elsberry Drainage District.''

The proceeding was commenced on August 23,
1910, the final judgment from which this appeal is
taken having been entered on April 13, 1911.

No exceptions to the rulings of the court on the
admission or exclusion of evidence were preserved in
the appellants' motion for new trial, nor were any dec-
larations of law asked or given. The following objec-
tions are preserved in the bill of exceptions, and urged
here:

''First. Because the proposed drainage district
cannot be established over the same territory covered
by the King's Lake Drainage and Levee District.

''Second. That the court did not have jurisdic-
tion, because a majority in interest of the landowners
did not sign the petition.

''Third. Because all interested and necessary
parties have not been made parties nor entered their
appearance.

''Fourth. Because the lands of the objectors
should not have been included in the district.''

I. The King's Lake Drainage and Levee District
was organized to construct a levee to protect the lands
in the district from the Mississippi river. This is

conceded in respondents' brief.   The record shows the following:

"Petitioners read part of the commissioners' report in the King's Lake Drainage and Levee District, showing the plan and scope of the work as follows:

"The plan and scope of the work proposed is as follows:   First.   To rebuild, strengthen and raise the old levee eighteen inches above the high watermark of 1903 along the route on which it is situated, and extend the same at the south end a distance of two miles along the route indicated on plat and profile to the head of Brear Ridge.''

It was testified by one of the commissioners of said drainage and levee district as follows:

"The levee has not been completed.   The levee has been built down to Brear Ridge, but not raised the eighteen inches.   The assessments have all been paid and expended except that in litigation.   Am keeping the levee in repair.   That is the only work we are doing.''

The right to incorporate a drainage district under article 1 of chapter 41, Revised Statutes 1909, by proceedings in the circuit court, is not limited by the statute to lands which are not included in a drainage district already established.   In State ex rel. v. Bugg, 224 Mo. 537, we held that the county court had authority to create a drainage district out of the same territory embraced in one already established.   True, we said in that case that both districts would be under the control of the county court, which fact would prevent any clash of authority.   Still, the reasons given in that case why such authority exists apply here. : Considering the very limited scope and purpose of the existing King's Lake Drainage district, namely, to maintain a levee against overflow from the river, no collision of interests or authority is to be apprehended.

It is urged that under section 5575 of article 3 the commissioners of the King's Lake Drainage and

Levee District have the power to do everything contemplated by article 1 of the same chapter. A comparison of the articles does not warrant this claim. The enlarged powers given by section 5575 relate to the work already done under the provisions of the article, and look to its greater efficiency. In any event, such additional powers can be exercised only after application to and further order by the county court. We see no more danger in this case of conflict of jurisdiotion than existed in the above case of State ex rel. v. Bugg. A similar objection was made in Little River Drainage District v. Railroad, 236 Mo. 94, and was there disposed of in the following language by KENNISH, J.: "The fact that the land is a part of an existing drainage district and has paid benefits therein, is not a valid objection to including it in the proposed district, and the court properly refused objectors' instruction numbered 8. [1 Page & Jones on Taxation by Assessment, sec. 550; South Highland Land & Improvement Company v. Kansas City, 172 Mo. 523.]"

II. It is claimed that the court did not get jurisdiction because the articles of association were not signed by "a majority in interest of the owners," as required by section 5496, Revised Statutes 1909. The record shows that the signers owned a majority of the land within the district in acreage, and also a majority in value, unless the encumbrances on their land by way of mortgages be deducted from the actual value. Respondents claim that inasmuch as the mortgagees did not sign, the amount of their aggregate mortgages should be deducted from the aggregate value of the lands, thereby reducing the value of the lands owned by the signers below a majority in value. Before final judgment was entered in the circuit court, but after the objections were filed and evidence taken, the amendment of 1911 to this law (Laws 1911, p. 206) took effect. This amendment substituted "majority in

acreage'' for ''majority in interest.'' Appellants insist that the amendment governs in this case. Whether it does we need not decide. We think it clear that for the purpose of instituting the proceedings, and giving jurisdiction to the circuit court, the mortgagees are not necessary signers. Taking the article as a whole, it contemplates that the ''owners'' who are to institute the proceedings, elect commissioners, and otherwise act, are the title owners of the land. Each owner, under section 5507, Revised Statutes 1909, is entitled to one vote for each acre owned by him.

III. The record shows that a tract of 640 acres was owned by the Long Estate, a corporation. The corporate name was signed by one of its directors. The record also shows a subsequent resolution by the board of directors ratifying the signing, and stating that it was done by authority given prior to the signing. Another tract of 486 acres was owned by four persons, namely, Deering and his wife, Moa F. Fisher and Mrs. Cave. These names were signed by one Gibson, under written authority from Deering, who purported to act for all the owners. Another tract of one hundred acres was owned by Elsberry and Goodman, in what relation does not appear. Elsberry signed for both. All of the petitioners whose names are signed to the articles appear in the subsequent proceedings as petitioners by attorneys. None of them at any time objected that their names were not signed by proper authority.

This paper, called by the statute ''articles of association,'' is in effect the first pleading in the case. It takes the place of and performs the function of a petition. Summons is issued upon it, and objections are filed to it. The signers appear in court by attorney as do plaintiffs in ordinary actions, and the case is styled in their names. The law contemplates that every acre of land within the proposed district shall be represented in court by its owner, who appears

either as a signer (plaintiff) or by summons as a defendant. We think these parties, whose names were signed by another, as stated above, and who appear by attorney throughout the proceedings, without objecting, are in court, and are bound by its judgment.

It is also objected that the mortgagees are not in court, either as signers or by summons. What we say in paragraph two disposes of this objection.

IV. Whether the lands of the objectors will be benefited, and whether they are properly included within the district, are questions of fact which were tried out before the court upon testimony pro and con. The judgment of the trial court is supported by substantial testimony, and therefore should not be disturbed in this court.

Finding no error in the record, the judgment is affirmed. All concur.