W. D. BIRD and A. A. BIRD, Appellants, v. BOARD OF
SUPERVISORS of Harrison County, Iowa; BOARD OF
SUPERVISORS of Pottawattamie County, Iowa; HAR-
RISON-POTTAWATTAMIE DRAINAGE DISTRICT No. 1 and
WILSON   SUBDISTRICT   HARRISON - POTTAWATTAMIE
DRAINAGE DISTRICT No. 1, Appellees.

**Drainage:** ESTABLISHMENT OF DISTRICTS: SUBSEQUENT ANNEXATION OF
1  TERRITORY.   Section 1989-a54, as amended by chapter 119 of the
Thirty-Third General Assembly, authorizes the annexation of ter-
ritory to an established district after the improvement in the orig-
inal district has been completed, the same as prior thereto; and this
construction of the statute does not supplant section 1989-a25,
which has reference to those cases where the improvement has
proven insufficient to drain all the lands necessarily tributary
thereto.

**Same:** ESTABLISHMENT OF SUBDISTRICTS: STATUTES.   Section 1989-a23
2  provides for the establishment of a subdistrict composed of lands
within the limits of a drainage district previously established;
but it is not necessary for the annexation of territory that it be
situated wholly within an original district.   By the provision of
section 1989-a54, lands outside the original district may be an-
nexed and made a part thereof, and they then become subject
to the provisions of the previous statute the same as though or-
iginally within the district, and a subdistrict may be formed there-
from.

**Same:** JURISDICTION.   Where a drainage district was established by
3  the joint boards of two counties, the organization of a subdistrict
therein is subject to the jurisdiction of the two boards, although
the land lies wholly within one county.

*Appeal from Harrison District Court.*—HON. O. D.
WHEELER, Judge.

WEDNESDAY, APRIL 3, 1912.

THIS suit originated as an appeal from the joint action of the boards of supervisors of Harrison and Pottawattamie counties. Such action complained of on appeal consisted in the establishment of a drainage subdistrict under the provisions of section 1989-a23, Code Supplement. After a hearing on the merits, the district court confirmed the action of the supervisors and dismissed the appeal. From such order, the complainants below have appealed to this court.—*Affirmed.*

*Milchrist & Scott,* and *S. H. Cochran,* for appellants.

*W. H. Killpack,* and *C. W. Kellogg,* for appellees.

EVANS, J.—The grievance of the appellants lies further back than the last order of the boards of supervisors, from which their appeal was taken. They challenge the jurisdiction of the supervisors to make the order complained of. In the consideration of this question, prior proceedings are involved.

Prior to April 16, 1909, the Harrison-Pottawattamie drainage district No. 1 had been duly established and fully constructed by the joint boards of the two counties. Its approximate cost was $272,000, all of which had been assessed against the included lands and collected, except to the amount of about $900. Practically none of the lands for whose benefit the present subdistrict is proposed to be established were then included in such joint district.

On April 16, 1909, chapter 118 of the Acts of the 33d General Assembly went into effect. Section 22 of such chapter is now known as section 1989-a54, and is as follows:

Sec. 1989-a54.   Additional Lands Included in Drainage District. That after the original establishment of a drainage district, as in this chapter provided, if the said board is satisfied that additional lands should be included within any drainage district, *and that said lands are bene-*

*filed by the improvement therein,* and that said lands should have been included in said original district, then, in such case, the board may order the engineer to make a plat of said lands, with the elevations thereof, and report thereon; and thereupon, if said report be in favor of including additional lands, which shall be particularly described in the report, said board shall proceed in such matter as to said proposed annexed territory as in the original establishing of such district, including the fixing and levying of the special tax for benefits, and thereafter the said annexed territory shall be a part of said district, and governed in all respects as lands within the original district; or said annexation may be made and brought under the jurisdiction of the board for all of said purposes upon the petition of the owners of all the lands to be annexed.

Proceeding under this section, the supervisors of the two counties, acting jointly, annexed to their district No. 1 additional lands. This was done upon the petition of the owners of such lands. Immediately following such order of annexation, the same landowners petitioned for the organization of the subdistrict now under consideration. This subdistrict included all of the annexed lands. It included, also, certain land of the appellants, which lies adjacent to the main ditch of the original district, and through which a lateral must be constructed, in order to connect the subdistrict with the main channel. It may be conceded, for the purpose of this case, that the appellants will suffer more damage than benefit by the establishment of such subdistrict. The benefited lands form a basin which has no natural outlet, except as the water overflows its rim. In order to drain the same, provision is made by the proposed plan to cut through such rim of the basin, and from that point to follow the natural course of the water into one of the main ditches of district No. 1. The lands included within the subdistrict lie wholly within Harrison county.

Among other findings, the trial court found as follows:

(7) That the system of drainage proposed by said engineer and said commissioners is and was the only feasible plan whereby any considerable body of said lands embraced within such subdistrict could be effectively drained; and the plan adopted and established by the boards of supervisors in such joint session was and is the only feasible system for the permanent improvement of the great body of the lands lying within said subdistrict. That the old Wilson ditch is too shallow to permit of effective tiling or draining, and cannot be kept open, because it is not a living stream. That the great body of said lands drain to the south, and the drainage of the waters therefrom, can only be effected through the Allen creek ditch, as planned by the boards of supervisors.

(8) That the great body of the lands embraced in said subdistrict are low and wet, and require some system of drainage to permit of their cultivation, and the drainage thereof will be conducive to the public welfare, and will be a great public benefit.

The points presented for our consideration by appellants are stated in their brief as follows:

(1) There is no authority in law for the establishment of a subdrainage district, except when the lands embraced therein are wholly within the limits of an original drainage district theretofore established. Section 1989-a23, Code Supplement of 1907.

(2) A subdrainage district 'within the limits of an original district' can only be established when the precedent facts and conditions set forth and required by section 1989-a23, Supplement of Code 1907, have been alleged in the petition for the establishment of such subdistrict and shown on the hearing to exist. Section 1989-a23, Code Supplement of 1907.

(3) Section 1989-a54 of Supplement of the Code of 1907, providing for the annexation of territory 'after the original establishment of a drainage district,' does not contemplate that such annexation should be effected by a subsequent, independent adversary proceeding, but by a proceeding supplemental and auxiliary to the proceeding in which the original district is established. The proceeding prescribed by section 1989-a54 is not available after

the original district has been established, the improvement constructed, and the original proceeding closed.

(4)   Jurisdiction is conferred upon joint boards of supervisors of two or more counties to establish a levee or drainage district only 'when the desired levee or drainage ·district extends into or through two or more counties and embraces land in two or more counties.'

We take up the third point first.

I.   Does section 1989-a54 contemplate a possible annexation of territory *after the construction* of the improvement?   The construction of this section which is contended

1. Drainage: establishment of districts: subsequent annexation of territory.

for by counsel is succinctly put by the statement that the language of the statute is, "After the original *establishment* of a drainage district," and not "after the original establishment of a drainage district and construction of an improvement therein."   The substance of the argument is that this section was intended to confer power upon the board to correct its own judgment as to the boundaries of the district at any time *before* the completing of the enterprise and the settling of the rights of all interested parties. The argument is not without its force.   But it eliminates something from the amendatory act, and particularly the clause which we have underscored above, "and that said lands *are* benefited by the improvement therein."   This clause, with its present tense, quite clearly points to a possible annexation of territory *after the improvement* has come into existence.   The practical difficulties which may be encountered by such an application of this amendatory act are not necessarily greater than those which would arise if the annexation were attempted before the completion of the enterprise, and after the assessment of benefits and damages and the letting of contracts and the partial construction of the work.   Great practical difficulties are possible whichever construction be put upon the statute.   But,

whether difficult or not, its practical working will always enlighten the Legislature to its proper amendment.

It is earnestly argued that the construction adopted by the trial court supplants section 1989-a25. Such section is as follows:

New Levee of Drainage Districts.—If any levee drainage district or improvement heretofore established, either by legal proceeding or by private parties, or which may hereafter be established, shall prove insufficient to protect or drain all of the lands necessarily tributary thereto, the board of supervisors, upon petition therefor as for the establishment of an original levee or drainage district, shall have the power and authority to establish a new levee or drainage district covering and including such old district or improvement, together with any additional lands deemed necessary; and whenever a new district shall be established as contemplated in this section and the new improvement shall extend ·into or along the former improvement, the commissioners of classification of benefits shall take into consideration the value of such old improvement in the construction of the new improvement and credit the same to the parties owning the old improvement as their interest may appear.

It is argued that this section controls in all cases where annexation is proposed after -the construction of the improvement. It will 'be noted that this section has reference to those cases where the established improvement "is proved insufficient to protect or drain all of the lands necessarily tributary thereto." The case before us is not a case of that kind. The supervisors proceeded upon the theory that the improvement constructed in district No. 1 was *sufficient* to ·drain the lands involved in the territory proposed to be annexed. The two sections are therefore quite distinct in their purposes. We reach the conclusion that the statute is sufficient in its terms to authorize the annexation of territory, even after the completion of the original enterprise.

II. It is next contended by appellants that the establishment of a subdistrict is not permitted, "except when the lands embraced therein are wholly within the limits of an *original* drainage district theretofore established. This proposition is based upon section 1989-a23, which provides as follows: ·

2. SAME: establishment of subdistricts: statutes.

Sub-Drainage Districts.—If any person who owns land within the drainage district which has been assessed for benefits and which is separated from the ditch, drain or water course for which it has been assessed, by the land of another or others, shall desire to ditch or drain his said land across the land of such other or others into such ditch, drain or water course and shall be unable to agree with such other or others on the terms and conditions on which he may enter upon their lands and construct such drain or ditch, he may proceed in the manner in this section provided, and the ditch or drain which he shall construct or cause to be constructed shall be considered to be conducive to the public health, welfare, convenience and utility to promote which said drainage district was established. He may file his petition with the county auditor asking the board to establish a sub-district within the limits of the original district for the purpose of securing more complete drainage, describing the lands to be affected thereby by metes and bounds or otherwise so as to convey an intelligible description of such lands; and the bond and all other proceedings shall be the same as herein provided for the establishment, formation and construction of original districts and improvement thereof, including the assessment of damages and the assessment of benefits and when established and constructed, it shall be and become a part of the drainage system of such drainage district and be under the control and supervision of the board of supervisors.

The argument is that, inasmuch as the lands of the petitioners are only a part of the *annexed territory,* and were not included in the *original* territory, this section of the statute has no application thereto. It must be borne in mind that this section was enacted prior to the amendment of April 16, 1909, which we have quoted above as

section 1989-a54. This section a23 provides that a petitioner may apply to the board "to establish a *subdistrict* within the limits of the *original district* for the purpose of securing," etc. The terms "subdistrict" and "original district" are used in contradistinction to each other, and no other significance should be given, in this connection, to the qualifying word "original." The term "original district" could not have been used at the time of the enactment of this statute in contradistinction to the "annexed territory" provided for by section a54, because such section was the enactment of a later General Assembly. The later enactment of a54 expressly provides that "the said annexed territory shall be a part of said district and governed in all respects as lands within the original district." At this point, the term "original district" is used in contradistinction to "annexed territory." But this provision of the statute reduces the distinction to a thing of the past, and makes the new territory a part of the district, and identifies it "in all respects" with the lands within the original district. The very purpose of this provision was to make the previous statutes applicable in all respects to the annexed territory as to the lands in the original district. For the purpose, therefore, of construing section a23, the phrase "within the limits of the original district" must be deemed as applicable to the annexed territory as to the lands originally included in the district. We do not overlook the fact that assessment of benefits has not been actually made upon the lands included in the annexed territory. Assessment of such benefits is contemplated; but this appeal was taken before such assessment could be made. We understand from the argument that all parties agreed to a suspension of all further proceedings before the board until after a determination of this appeal.

Lastly it is urged that, inasmuch as the lands included in the proposed subdistrict lie wholly within Harrison county, jurisdiction of such proceeding rested wholly

in the Harrison county board, and that the joint boards are without jurisdiction. It is, of course, conceded that the original district was under the jurisdiction of the joint boards. Section a54 brings the annexed territory into the same jurisdiction by providing that it shall be "governed in all respects as lands lying within the original district." Section a23 provides that the subdistrict shall become a part of the drainage system of such drainage district and be under the control and supervision of the board of supervisors. If the annexed territory is to be deemed under the jurisdiction of the joint boards, it follows that the subdistrict must be deemed under the same jurisdiction. Otherwise we have a conflict of jurisdiction extending over the same territory. When section a23 is applied to a subdistrict organized within a joint district, it should be deemed as under the control of the joint boards. We see no other consistent interpretation of the various provisions of the statute.

*3. SAME: jurisdiction.*

This method may result, as suggested by counsel for appellants, in a possible conflict of interests and plans as between the two boards. But every statute presents possible difficulties. If there is a better way than to permit the joint boards to exercise jurisdiction over a subdistrict lying wholly within one county, it should be presented to the consideration of the Legislature. The subject is one upon which perfect legislation can be had only after more or less practical experiment and successive legislative amendments. In the meantime, it is required by section a46 that this legislation "be liberally construed to promote the leveeing, ditching, draining and reclamation of wet or overflow or agricultural lands." We are required, therefore, to solve doubts in favor of the enterprise, and not to put technical obstacles in the way of the practical judgment of those who are charged with the duty of giving practical effect to the legislation.

We reach the conclusion that the trial court properly dismissed the appeal, and its order is *affirmed*.