CHARLOTTE HARBOR AND NORTHERN RAILWAY COMPANY, A
CORPORATION, *Appellant,* v. W. G. WELLES, L. W. WHITE-
HURST, D. L. SKIPPER, W. M. WHITTEN AND J. W. BUL-
LOCK, AS AND CONSTITUTING THE BOARD OF COUNTY COM-
MISSIONERS FOR DESOTO COUNTY, *Appellees.*

Opinion Filed July 31, 1919.

Petition for rehearing denied August 13, 1919.

1   The reference in section 1 of Chapter 6208, Laws of Florida,
    Acts of 1911, to "territory embraced wholly or in part in one
    or more road districts," has reference to road districts as con-
    stituted at the time of the passage of this Act, and does not
    refer to the creation of "special road and bridge districts"
    either partly or wholly within another special road and bridge
    district.

2.  Chapter 7750, Laws of Florida of the extraordinary session of
    1918, invested in the county commissioners of the several coun-
    ties of the State, the authority to create into a special road
    and bridge district "territory embraced wholly or in part in
    one or more road districts, or wholly or in part in one or more
    special road and bridge districts."                          (

3   The legislature has plenary power to crystalize policies, opin-
    ions, ideas and sentiments into statute law, limited only by
    constitutional prohibitions, Courts do not substitute their will
    for the will of the legislature, and "judicial tribunals cannot
    interfere with the legislative discretion, however onerous it
    may be."   The legislature had the power to include in Chapter
    6208, a provision authorizing county commissioners to create
    into special road and bridge districts "territory embraced
    wholly or in part in one or more special road and bridge dis-
    tricts;" and, having such power, it also could pass a subse-
    quent Act validating any special road and bridge district which
    had been previously constituted in "territory embraced wholly

228    SUPREME COURT OF FLORIDA.

or in part in one or more special road and bridge districts," as was done when it enacted Chapter 7750, Laws of Florida, Acts of the extraordinary session 1918, validating special road and bridge districts theretofore created in "territory embraced wholly or in part in one or more special road and bridge districts."

4    Chapter 7750, Laws of Florida, is a curative Act, general in its nature, and not only invested in the county commissioners of the several counties with the power to create special road and bridge districts in their respective counties in any "territory embraced wholly or in part in one or more special road and bridge districts," but it contains a further provision specially validating all special road and bridge districts theretofore created in "territory embraced wholly or in part in one or more special road and bridge districts," and declares its provisions shall have not only prospective force and effect, but also retroactive force and effect. This Act is constitutional and deals with a subject matter over which the legislature had entire control, and the fact that it is also retroactive in force and effect does not render it unconstitutional.

5.    Chapter 8024, Laws of Florida, Acts of 1919, is a special Act passed for the special purpose of legalizing, validating, establishing, and creating "Charlotte Harbor Special Road and Bridge District" in DeSoto County, and legalizing and validating the assessment made for the construction of roads and bridges therein; and validating and legalizing all warrants issued within said district for and in payment of expenses incident to the creation and establishment thereof, and the building of roads and bridges therein. It becomes the duty of this court to take judicial notice of this validating Act, and to give it due recognition and effect.

6.    Appellant filed a bill to enjoin the maintenance of a special road and bridge district, known as "Charlotte Harbor Special Road and Bridge District" overlapping the boundaries of a formerly created special road and bridge district, upon the theory that at the time of the creation of the special road and bridge district the county commissioners, under Chapter

6208, Laws of Florida, Acts of 1911, had no authority to create a district overlapping the boundaries of another such special road and bridge district. A demurrer to the bill was sustained by the chancellor, and the bill dismissed. After the case reached this court on appeal the legislature passed Chapter 7750, Laws of Florida, of the extraordinary session of 1918, empowering the county commissioners of the several counties of the State to create special road and bridge districts in "territory embraced wholly or in part in one or more special road and bridge districts," and validating the Acts of the county commissioners in establishing special road and bridge districts in "territory embraced wholly or in part in one or more special road and bridge districts," this Act being retroactive in effect as well as prospective. And later, in the regular esssion 1919, the legislature passed Chapter 8024, which is a special Act validating the creation of the "Charlotte Harbor Special Road and Bridge District," and legalizing the assessments made for the construction of roads and bridges therein. Under these circumstances, it is entirely useless for this court to enter into any discussion of the questions involved in the demurrer to the bill of complaint, or to determine whether the chancellor was corrct in his ruling on the demurrer and dismissing the bill, for since that order was made conditions have changed on account of the legislation just mentioned, and "in consequence of such legislation, the complainant has no standing in court or right to any relief by reason of the matters complained of in said bill."

An Appeal from the Circuit Court for DeSoto County; John S. Edwards, Judge.

Decree affirmed.

*McKay & Withers* and *Treadwell & Treadwell,* for Appellant;

*John W. Burton,* for Appellees.

WILSON, Circuit Judge.—The Charlotte Harbor and Northern Railway Company, as a taxpayer, on the 22nd day of February, 1918, filed its bill of complaint against

W. G. Welles, L. W. Whitehurst, D. L. Skipper, W. M. Whitten and J. W. Bullock, constituting the Board of County Commissioners of DeSoto County, Florida, seeking to enjoin the said County Commissioners from maintaining in DeSoto County a special road and bridge district, known as the "Charlotte Harbor Special Road and Bridge District," and to restrain the assessment and collection of taxes against the property of the appellant situate within the boundaries of said special road and bridge district, and also to restrain the County Commissioners from paying warrants issued, and from issuing other warrants in the said district to meet any of the obligations created in pursuance of the proposed "Charlotte Harbor Special Road and Bridge District" project.

It is alleged in the bill that previous to the creation of the said "Charlotte Harbor Special Road and Bridge District," the said County Commissioners had created in DeSoto County what was known and designated as the "Punta Gorda Special Road and Bridge District."

It is further alleged that a large part of the "Charlotte Harbor Special Road and Bridge District" overlaps the territory embraced within the "Punta Gorda Special Road and Bridge District." The appellant owning in the new, or "Charlotte Harbor Special Road and Bridge District," alleges that said last mentioned special road and bridge district has no valid existence, and that the officers are without authority to levy special taxes on its property, by reason of the fact that said district overlaps and includes territory embraced in the "Punta Gorda Special Road and Bridge District." No objection is made to the regularity of the proceedings creating the two districts, and the sole question involved as to the legality of the "Charlotte Harbor Special Road and Bridge District," is the question of

whether or not the formation of same partly within the territory of the "Punta Gorda Special Road and Bridge District" renders its creation invalid.

On the 29th of March, 1918, the appellee, defendant below, filed a demurrer to the bill of complaint. In view of the conclusion we have reached it is unnecessary to write the grounds of demurrer into this opinion. It is enough to say that the first ground was general, averring a lack of equity; the second ground avers, in substance, that the bill on its face shows the "Charlotte Harbor Special Road and Bridge District" was legally created and established; while the third and fourth grounds of the demurrer set up a claim of estoppel by laches upon the part of the complainant.

On the 17th of June, 1918, the chancellor entered final decree sustaining the demurrer, and dismissing the bill of complaint. From this decree the complainant entered its appeal to this court.

There are four assignments of error. The first complains that the court erred in entering the said decree of June 17th, 1918; the second, complains that the court erred in sustaining the demurrer to the bill of complaint; the third, complains that the court erred in dismissing the bill of complaint; while the fourth is the same as the second, stating that the court erred in not overruling the demurrer to the bill of complaint.

The first legislation in this State on the subject of creating special road and bridge districts was Chapter 6208, Laws of Florida, Acts of 1911. Section 1 provided, in substance, that whenever residents of any territory embraced wholly or in part, in one or more road districts, as at that time constituted, in any county of the State of Florida, desire to have such territory constituted into a

special road and bridge district, and to have constructed within said special district, permanent roads and bridges, they shall present to the Board of County Commissioners a petition signed by not less than twenty-five per cent. of the registered voters who are freeholders residing within the territory which is proposed to constitute into a special road and bridge district. This petition shall describe by metes and bounds, or other accurate method, the territory which it is proposed to create into a special road and bridge district, and also set out in general terms a description and proposed location of the roads and bridges to be constructed, together with the amount estimated as being necessary with which to pay for the construction of same. The statute then provides for certain duties to be performed by the Board of County Commissioners in calling the election, etc. In this section it will be observed that there is no provision made by the legislature whereby the county commissioners might create districts either wholly or partly overlapping each other. The reference in this section to "territory embraced wholly or in part in one or more road districts," has reference to road districts as constituted at the time of the passage of this Act, and has no reference, whatever, to creating a "special road and bridge district" either partly or wholly within another special road and bridge district.

The demurrer to the bill of complaint admits the truth of the allegations of the bill that the "Charlotte Harbor Special Road and Bridge District" was created out of a part of and overlaps the boundaries of the "Punta Gorda Special Road and Bridge District," thus raising the question of whether or not this overlapping of the one upon the other district would render abortive the action of the

county commissioners in undertaking to create the "Charlotte Harbor Special Road and Bridge District."

In view of the subsequent legislation on this matter, we do not deem it necessary to pass upon the authority of the county commissioners to create under Chapter 6208, Laws of Florida, Acts of 1911, special road and bridge districts, either partly or wholly overlapping each other. This point was doubtless pertinent at the time the demurrer was decided by the chancellor, but it is no longer so, and as the statute has been changed, and no further litigation is likely to arise under the one statute, there is no reason now for this court to determine this question.

The next legislation on the subject of special road and bridge districts was Chapter 6879, Laws of Florida, Acts of 1915. This legislation, however, did not amend or change section one of said Chapter 6208, Laws of Florida, Acts of 1911, and, therefore, has no bearing upon the question at issue.

The next legislation on the subject was Chapter 7750, Laws of Florida, of the extraordinary session 1918. This Chapter, among other things, amends Section 1 of Chapter 6208, Laws of Florida, Acts of 1911, and invests the county commissioners with authority to create into a special road and bridge district "territory embraced wholly or in part in one or more road districts, or wholly or in part in one or more 'special road and bridge districts,' as at that time constituted in any county of this State," thus, clearly defining the policy of the legislature towards the creation and maintenance of special road and bridge districts within the counties of Florida. It is argued that in as much as the statute did not authorize the creation of the special road and bridge district overlapping another at the time the attempt was made to create the

"Charlotte Harbor Special Road and Bridge District," that the legislature was without the power to pass an Act validating the action of the county commissioners in attempting to do so. We do not think this position is tenable.

The first question we deem entitled to consideration is one of the power of the Legislature to pass an Act authorizing county commissioners in the several counties of the State, to create special road and bridge districts. Has the legislature the power to authorize by general Act the creation of this special road and bridge district in such a manner as that the boundaries of one may overlap upon another, or to create a new district partly or wholly within the boundaries of an existing district? Unless there is some constitutional limitation upon this point, such an Act would be entirely within the discretion of the legislature. In matters of State policy and law-making the legislature has plenary powers, limited only by the Constitutions of the State of Florida, and of the United States. If an Act is regularly passed by the legislature and there is no constitutional limitation upon the power of the legislature to pass such an Act, then the Act is valid and binding, however harsh or oppressive it may seem. This court will never substitute its will for the will of the legislature. There is no provision in the Constitution which would inhibit the passage of such an Act by the legislature; therefore, the legislature, under its general power, was the sole judge of whether it should enact such legislation. This authority of the legislature has been upheld in other States with reference to the creation of drainage districts, the principle being the same as involved in the creation of the road districts. Mittman v. Farmer, 162 Iowa 364, 142 N. W. Rep. 991,

Ann. Cas 1915C. 1. On page 9, Ann. Cas. 1915C., there is a note to Mittman v. Farmer, citing many authorities which throw light on this subject. Among other things, it is said that, "a drainage district may be established to cover the same territory as a previously established district." Kelly v. Drainage District No. 60 in Greene County, 158 Iowa 735, 138 N. W. Rep. 841; State *ex rel.* Marshall v. Bugg, 224 Mo. 537, 123 S. W. Rep. 827. Also subdistrict may be organized within the limits of an established district to meet the peculiar needs of a portion of the district. People *ex rel.* Miller v. Scott, 132 Ill. 427, 23 N. E. Rep. 1119; People *ex rel.* v. Wilder, 257 Ill. 304, 100 N. E. Rep. 932. "A drainage district may likewise include land forming a part of another district." Bird v. Board of Sup'rs of Harrison County, 154 Iowa 692, 135 N. W. Rep. 581; Sibbett v. Steele, 240 Mo. 85, 144 S. W. Rep. 439; State *ex rel.* Sheffer v. Fuller, 83 Neb. 784, 120 N. W. Rep. 495; Wilson & Co. v. Wm. R. Compton Bond & Mortgage Co., 103 Ark. 452, 146 S. W. Rep. 110.

In Maltby v. Tautges, 50 Minn. 248, 52 N. W. Rep. 858, in the body of the opinion of the court says,—"the construction of highways and bridges furnishes one of the most common occasions for special legislation creating special taxing districts, frequently, several in number, and often overlying each other. Different taxing districts, for the same general purpose, may be thus created where there are peculiar reasons why one part of the public should bear a proportion of the burden greater than that which should be borne by another, and a greater rate of taxation be imposed on some districts than on others. This does not violate the principle of equality and uniformity of taxation if the establishment of several districts has only equality and justice in view." 1 Cooley

on Taxation (3rd. ed.), page 234, discussing the establishment of districts, maintains that "the power to determine what shall be the tax district for any particular burden, is purely a legislative power, and not to be interfered with or controlled except as it may be limited or restrained by constitutional provisions. Reference to the cases cited will show that this is a principle which the courts assert with great unanimity and clearness. "The judicial tribunals cannot interfere with the legislative discretion, however onerous it may be." The authorities cited are numerous. See also Stewart v. DeLand-Lake Helen Special Road and Bridge District in Volusia County, 71 Fla. 158, text 161, 71 South. Rep. 42.

In Hopkins v. Special Road and Bridge District No. 4, in Brevard County, 73 Fla. 247, 74 South. Rep. 310, this court said, "in authorizing the formation of special road and bridge districts in the county, the legislature may adopt any method it chooses, no constitutional limitation being thereby violated."

Concluding that the legislature had the power to pass the Act in such form as to authorize the county commissioners to create districts overlapping each other, we turn now to the question of the validity of the Act of the extraordinary session of the legislature in 1918, which is Chapter 7750, Laws of Florida. It is suggested by counsel that in view of the fact that the "Charlotte Harbor Special Road and Bridge District" was organized with its boundaries overlapping upon the "Punta Gorda Special Road and Bridge District" prior to the passage of Chapter 7750, Laws of Florida, extraordinary session, 1918, authorizing county commissioners to create a special road and bridge districts in territory wholly or in part in one or more special road and bridge districts, that the

action of the county commissioners in creating "Charlotte Harbor Special Road and Bridge District," was wholly without authority of law, and that the subsequent passage by the legislature of Chapter 7750, Laws of Florida, extraordinary session 1918, did not cure the existing illegality. We do not agree with the views suggested by counsel. Chapter 7750, Laws of Florida, extraordinary session 1918, is a curative Act, general in its nature, the first section of which grants to the county commissioners the power to create special road and bridge districts in their respective counties in any territory "embraced wholly or in part in one or more special road and bridge districts." And section three, which also includes section four and a half as enacted, specially validates and declares legal all special road and bridge districts consisting of part or parts of one or more special road and bridge districts. This section also provides further that this law shall not only have a prospective force and effect, but also a retroactive force and effect.

We are unable to find any provision in the Constitution of Florida prohibiting the passage of retroactive laws by the legislature, and in the absence of any express provision declaring such law inoperative and void, no law should be declared void simply because it may be retroactive in its action. 8 Cyc., page 1018.

Without discussing the question of whether or not the county commissioners had authority to create special road and bridge districts overlapping each other, at the time of the creation of the "Charlotte Harbor Special Road and Bridge District," we are clearly of the opinion that if the legislature had the power to put into the original bill, Chapter 6208, Laws of Florida, Acts of 1911, a declaration authorizing boards of county commissioners to

create a special road and bridge districts, lying wholly or in part in one or more other special road and bridge districts, it also had the power to pass an Act curing or validating the action of the county commissioners in creating a special road and bridge district partly lying in another special road and bridge district. This seems to be the general rule. 8 Cyc. 1023, and numerous authorities cited in the foot-note.

This doctrine has heretofore been recognized in this State. City of Jacksonville v. Basnett, 20 Fla. 525; Cranor v. Volusia County Com'rs, 54 Fla. 526, 45 South. Rep. 455; Givens v. Hillsborough County, 46 Fla. 502, 35 South. Rep. 88.

Objection is also made that Chapter 7750, Laws of Florida, extraordinary session 1918, is unconstitutional because it is claimed that it was not regularly passed by the legislature under the requirements of the Constitution. We do not think the objection is well taken. We conclude that said Chapter is constitutional and valid, and that it authorized county commissioners in the several counties of the State to create special road and bridge districts in territory lying wholly or in part in one or more special road and bridge districts, and that it also validates and cures all special road and bridge districts, including the Charlotte Harbor Special Road and Bridge District, which were created by county commissioners from territory lying wholly or in part in one or more other special road and bridge districts.

Since the passage of Chapter 7750, Laws of Florida, extraordinary session 1918, the legislature in its regular session in 1919, passed a special validating Act, which is Chapter 8024, Laws of Florida, Acts of 1919, and was passed for the special purpose of legalizing, validating,

establishing and creating "Charlotte Harbor Special Road and Bridge District" in DeSoto County, and legalizing and validating the assessments made for the construction of roads and bridges therein; and validating and legalizing all warrants issued within said district for and in payment of expenses incident to the creation and establishment thereof, and the building of roads and bridges therein. Section 1 of this Act validates the Act of the Board of County Commissioners of DeSoto County in creating and establishing the Charlotte Harbor Special Road and Bridge Ditsrict. Section two validates all warrants theretofore issued, and all that should thereafter issue in connection with the building of roads and bridges in said district. Section three validates and legalizes the assessment and levy of taxes in the district. Section four deals with the funds of the special road and bridge district. Both Chapters 7750 and 8024 have been passed by the legislature since this case has been pending in this court. It becomes the duty of the court to take judicial notice of the said validating Act of the legislature, and to give it due recognition and effect. Such was the holding of this court in Cranor v. Volusia County Com'rs, *supra,* and the language used by Mr. Justice TAYLOR in writing the opinion in that case may be applied with equal force and effect in this case.

It is entirely useless now for this court to enter into any discussion of the question involved in the demurrer to the bill of complaint. Neither is it necessary to determine whether or not the chancellor was correct in his ruling on the demurrer, and his order dismissing the bill. Since that order was made, and since the case has been in this court, conditions have changed on account of the legislation just mentioned; and, as was said in the case

last cited, "in consequence of such legislation, the complainant now has no stand in court or right to any relief by reason of the matters complained of in his said bill."

The decree of the chancellor overruling the demurrer and dismissing the bill of complaint should be affirmed.

PER CURIAM.—The record in this cause having been considered by this court, and the foregoing opinion prepared under Chapter 7837, Acts of 1919, adopted by the court as its opinion, it is considered, ordered and adjudged by the court that the decree herein be and the same is hereby affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.