BOARD PUBLIC INSTRUCTION LAFAYETTE COUNTY, v. FIRST NATIONAL BANK OF GAINESVILLE.

143 So. 738.
149 So. 213.
Opinion Filed October 8, 1932.
Opinion on Rehearing Filed June 24, 1933.

*Doggett, McCollum, Howell & Doggett,* and *Lester Summersill,* for the Plaintiff in Error;

*Hampton & Jordon,* for Defendant in Error.

ANDREWS, Commissioner.—The declaration filed July 14, 1925, alleged in substance in the first count that: On December 6, 1920, the Defendant Board at and in a regular session adopted a resolution which, after reciting that the schools of the county were "in need of funds to successfully carry on their work, and that the Board deemed it necessary to borrow some money," authorized the Chairman of the Board and the County Superintendent to borrow $20,000.00 at 8% interest from the plaintiff bank and the First National Bank of Live Oak; that the resolution was signed by all the members of the Board; that on December 20th following the Board's Chairman and the County Superintendent, acting pursuant to the resolution, procured the plaintiff bank to lend the Board $10,000.00, and to evidence same executed and delivered to the bank the note sued on, payable in six months with interest at 8%; that the bank paid, and the Board received, the $10,000.00 "for the uses and purposes aforesaid."

The second count invoked the allegations of the first count and in addition states that on June 20, 1921, the Defendant was indebted to the Plaintiff in the sum of $10,-000.00 for money loaned by the Plaintiff to the Defendant

on December 20, 1920, at the request of the Defendant, for the purpose of paying any and all legitimate expenses incurred, "or to be incurred" by the Defendant in operating the schools of LaFayette County. (The phrase in quotations above was stricken out on motion.) A demurrer was sustained to a third count.

Defendant filed seventeen pleas, all of which were stricken on August 7, 1928, except numbers 1, 2, 4, 5, 11, 13, 14, and 17, which were in substance as follows: (1) That the resolution for the borrowing of the money was not passed at a regular meeting of the Board, (2) denied that the resolution was signed by the Board members at a regular meeting and alleged that on the contrary the resolution was signed at different times and places by the several members of the Board, respectively, (4) alleged that the Board never was indebted as alleged, (5) denied that the money was borrowed for the purpose of paying legitimate expenses incurred in the operation of the county public free schools, (11) alleged that at the time the money was borrowed the Board had already borrowed in that same year more than 80% of its estimated budget and the previous loans had not been repaid, (13) denied that the Board ever received any part of the $10,000.00, (14) alleged affirmatively that the money was not received by the Board for the purpose of paying legitimate expenses incurred in the operation of the county free public schools, (17) denied the execution and delivery of the note. Issue was joined on these pleas.

At the trial the Defendant was allowed to file two additional pleas which in substance alleged that prior to January 1, 1920, the said Board had borrowed $5,500.00 which had not been repaid when the instant loan was made on December 20, 1929, as required by the statute. The record

fails to show whether or not issue was joined on these two additional pleas.

The copy of the "note" executed by the Chairman and Secretary of the Board together with the resolution of the Board, signed by the members of the Board, were attached as the cause of action of bill of particulars.

From the institution of this suit in 1925 until 1930 the litigation was conducted in LaFayette County before Judge M. F. Horne, one of the presiding judges of that circuit. November 30, 1930, the Plaintiff made application for change of venue to Columbia County of the same circuit upon the ground that Plaintiff feared that it could not obtain a fair trial in LaFayette County in that the boundaries of the property taxable for county school purposes are co-extensive with the County of LaFayette and that the tax-payers of the county would necessarily have to sit as jurors in the case and therefore would be financially interested adversely to the Plaintiff; that there was general anxiety throughout the state over high rates of taxation and there were but few eligible to jury service in LaFayette County who are not taxpayers, and that such of those as might be summoned for jury duty if not taxpayers would by constant association entertain similar views and thus prevent the Plaintiff from securing a trial before disinterested and impartial jurors. It also appears that the case had been pending so long in that county that the interest on the loan would amount to nearly as much as the principal. The Plaintiff is a non-resident of the county. Affidavits were filed in support of the application by citizens setting up substantially the above facts and stating that they did not believe the Plaintiff bank could obtain a fair trial in La-Fayette County. Several affidavits were filed on behalf of the Defendant by citizens of that county stating that

Plaintiff could obtain a fair and impartial trial in that county.

On November 13, 1930, the motion for change of venue was granted and on April 28, 1931, when the case was called for trial before Judge Horne in Columbia County, the Defendant moved to remand the case to LaFayette County, for trial upon the grounds that (1) Defendant Board had an absolute right to have the trial of the case in LaFayette County, (2) that no facts had been exhibited to the trial court upon which the court might have properly adjudicated the conclusion in favor of a change of venue. The motion to remand was denied, and after allowing the two above additional pleas to be filed to the declaration by the Defendant the trial was had upon the issues which resulted in a directed verdict for $17,882.27 and cost in favor of the Plaintiff, from which writ of error was duly taken to this Court.

The first and second assignments of error are based upon the Court's ruling (1) granting the motion for change of venue and (2) overruling the Defendant's motion to remand the cause for trial to LaFayette County. They are here considered together.

If the jurisdiction of the Circuit Court of Columbia County did not attach by reason of the case not being removable this point alone would, if decided in favor of Defendant, effectually dispose of this appeal. Green v. Wilson, 27 Fla. 429, 8 So. 723; Tampa, etc., R. Co. v. Tampa S. R. Co., 30 Fla. 595, 11 So. 562.

The point first presented by Plaintiff in error (Defendant below) is that the language of Section 4337 C. G. L. Florida 1927, giving the right to a change of venue "to either party to a civil cause," upon a proper showing, does not by the word "party" apply to a County Board of Public Instruc-

tion, upon the ground that the action is *local* and not transitory. This appears to be a new question in this State.

It is observed that Section 4451, C. G. L. of Florida 1927, provides that "no person interested in any issue to be tried" shall be a juror in any cause but that no person shall be disqualified from sitting in a trial of any suit in which "the state or any county or municipal corporation" is a party by reason of the fact that such person is a "taxpayer within the state or such county or municipal corporation."

The leading thought conveyed by the above statute is that "no person interested in the issues to be tried" in any cause shall be a juror therein, but the mere fact that a citizen of a county is "a taxpayer" therein does not *ipso facto* "disqualify" him from sitting as a juror in any suit in which the "county" is a party by reason of "interest" in the outcome of the suit. The statute does not undertake to state that a citizen may not be subject to "challenge for cause" by reason of his being a taxpayer of the county, for his interest may be pronounced in some cases and only incidental in others. Section 4359 C. G. L. of Florida 1927 (second paragraph) specifically authorized a ground of challenge "for cause" if the juror has "any interest" in the suit, also authorizes the trial court to excuse any juror who "does not stand indifferent in the cause."

In this connection Defendant in error contends that a County Board of Public Instruction does not occupy the same legal status as the Board of County Commissioners of a county which is a political subdivision of the State, nor that of a municipality which is an entirely spearate corporate entity to that of any county of the State. The Constitution recognizes but does not in terms provide for the creation of a Board of Public Instruction nor its status as a corporate entity. It is observed that Section 9 of Article

XII of the Constitution of Florida provides that all county school funds "shall be disbursed" by the "County Board of Public Instruction" solely for the support and maintenance of public free schools upon some declared principle to be determined by the Legislature.

The Legislature by Section 523 C. G. L. of Florida 1927, constitutes "The County Board of Public Instruction" of each county "a body corporate" and "in that name may acquire and hold real and personal property" and "perform other corporate acts for educational purposes." It is therefore at least a quasi-public corporation. In fact, in a former appeal of this case (93 Fla. 12, 111 So. 521) it was held that the Board was not merely "a branch of the sovereignty of the state" but is "a county instrumentality, a corporation organized to conduct certain affairs in that particular county"; also held that a County Board of Public Instruction being created a body corporate may by implication sue and be sued on its legal contracts regardless of lack of a specific statute giving such right, even though such boards operate under certain statutory limitations upon its powers.

The statute authorizes any such Board to borrow money (Section 566-568 C. G. L. of Florida 1927) and by necessary implication the Board would have power to execute such evidence of indebtedness as would be in accord with usual business practices, when not inconsistent with law. The statute does not undertake to provide the form of the evidence of such indebtedness to be executed by such Boards when "borrowing money."

It is very evident from various decisions in this country that one of the powers inherent in any court under the common law is the authority to grant a change of venue when deemed necessary to secure a fair trial before a jury having

no pecuniary interest in the result of the verdict. 27 R. C. L. 810 Section 30.

Originally all actions were local in character with respect to their venue and could be brought only in the county where the cause of action arose. They were later classified as local and transitory. An action was transitory where the transaction on which it was founded might have taken place anywhere and was considered local where the transaction could only have happened or been consummated in the place where it was made. Linger v. Balfour, Fla. 136 So. 433; 1 C. J., pages 931-933; 27 R. C. L. 786-787. Generally transactions arising out of contract are classed as transitory and the common law held such actions transitory regardless of the place where the contract was executed and to be performed. 27 R. C. L. 801 Section 22. Consummation of the loan to the Board could have legally been made anywhere in the State by the exchange of the proper papers authorizing and evidencing the obligation for the money paid by the Plaintiff.

Under Section 4219 C. G. L. of Florida 1927, "Suits shall be begun only in the county * * * where the Defendant resides, or where the cause of action occurred, or where the property in litigation is." Section 4222 C. G. L. of Florida 1927 provides that "Suits against corporations shall be commenced only in the county where such corporation shall have or usually keeps an office for such transaction of business, or where the cause of action occurred, or where the property in litigation is." It is thus seen that the first above statute governing the venue of suits against natural persons is practically the same as the latter which governs suits against corporations. These statutes confer the privilege upon a Defendant to be sued in the places designated but requiring that it be brought in one of such counties, though

not permitting him to elect in which county suit shall be brought. Santa Rosa County v. Trobuck, 77 Fla. 86, 80 So. 748.

It can well be said that in exercising its supervisory powers over public schools of the county and in determining the need for the loan and applying the proceeds to school purposes, the Board was acting in a governmental capacity which is circumscribed by certain statutory requirements and limitations; but in adopting the preliminary resolution, executing the evidence of indebtedness and the authorizing thereof by having the Chairman and Secretary sign and affix the corporate seal, the Board was acting in its corporate capacity. The suit was brought upon the "promissory note" as the evidence of the indebtedness (the statute does not prescribe the form) against the Board as a corporation. This being true, the rules governing the change of venue as to any ordinary or quasi-corporation must obtain, as it was brought upon an obligation to repay money borrowed in its corporate capacity.

It was held in the case of Humphrey's County v. Cashin, 128 Miss. 236, 90 So. 888, that "where the statute permits a state or subdivision thereof, to enter or be brought into suits as a litigant, it becomes subject, in the absence of a provision in the statute to the contrary, to all the rules governing the procedure of the court in other cases." Also held that the Plaintiff was entitled to a change of venue when it is made to appear in a civil action against a county that such Plaintiff cannot obtain a fair trial in the court where the cause is pending. In the above Mississippi case the grounds for the change of venue was "because of the undue influence of the President and members of the County's Board of Supervisors." We do not see, however, that there could have been any material difference had the pe-

tition for change been based upon the ground that an impartial jury could not be obtained by reason of their interest in the outcome of the case.

The new Board in the instant case had refused to repay the money borrowed and this, in the natural course of events would no doubt have had some influence over the outcome of the present suit, though the petition for change was not based upon that ground, but upon a ground usually more serious as it goes directly to the right of a fair trial by a jury which has no "pecuniary interest" in the outcome of the case.

The next matter presented by the Plaintiff in error is that no facts were shown sufficient to authorize a change of venue.

The grounds alleged, with the facts tendered in support thereof are principally founded upon a statement of fact that any jury summoned for the trial of the case in La-Fayette County would necessarily be composed of taxpayers and thus would be financially interested in the outcome of the case as they would have to pay any judgment rendered on their verdict by assessment levied upon their property.

As already pointed out, our statutes (Section 4451 C. G. L. of Florida 1927) provide that *no person* shall be "disqualified from sitting as a juror by reason of being a taxpayer of the county where the trial may be had. A similar statute (Section 4153 C. G. L. of Florida 1927) provides that *no judge* shall be "disqualified" from sitting in the trial of any suit in which any county is a party by reason that such judge is a taxpayer therein. In the case of State *ex rel.* v. Call, Circuit Judge, 41 Fla. 442, 26 So. 1014, wherein a taxpayer filed a bill to enjoin the County Commissioners from levying a special tax in a special sub-school district in which Judge Call resided and was a taxpayer,

the point was raised that Judge Call was disqualified to sit in the case because of a direct interest in the outcome of the case. This Court in passing upon the question said: "It is evident that Judge Call was directly interested in the result of the suit instituted before him. * * * The Judge's property interest in the district was common with that of complainant, Hart, and all other taxpayers therein. If no other legislation existed in this state than the section of the Revised Statutes referred to no doubt could arise as to the disqualification of the judge in the present case." The Court further held that the said statute "embraced only cases clearly within the letter and spirit" and does not apply to a tax levied by sub-school districts which is "neither a municipality or a county."

Under the above construction the said statute would not apply to a County Board of Public Instruction as it is not a county nor a municipality but an entirely separate entity to that of the county, so far as its legal status, powers and liabilities are concerned. See Cooley's Blackstone, p. 220. To have one's rights tried before jurors who have no interest in the outcome of the case is a very high legal privilege in our system of jurisprudence; such special interest in order to disqualify must, however, be a pecuniary interest in the results of the action. Sauls v. Freeman, 24 Fla 209, 4 So. 525. See also State v. Chillingworth, 93 Fla. 1107, 113 So. 563; Anderson v. Broward, *supra,* Johnson v. Wakulla County, 28 Fla. 720, 9 So. 690.

From all the conditions and circumstances of this case we cannot say that the trial court committed reversible error in granting the change of venue, nor thereafter refusing to remand.

The third proposition presented by the Plaintiff in Error is that the cause of action here sued upon was not, in view

of other outstanding and unpaid loans theretofore made by the Defendant Board, validated by the enactment of Chapter 8549, Laws of Florida, 1921. Plaintiff in Error here contends that inasmuch as it appears that there was $5,500.00 outstanding obligations for money borrowed by said Board during the previous scholastic year, which had not been repaid on December 20, 1920, and that more than 80 per cent. of the estimate needed for that year had already been borrowed when the obligation here in question was made, that the loan of $10,000.00 here in question was unlawful and not subject to validation by the said Act of 1921.

The "school year" begins July 1st of each year and ends on June 30th of the following year (Sec. 496 C. G. L. 1927), and a county school board is authorized by said Section 566 to borrow money to an amount not exceeding 80% of the amount as "estimated by them to be required for the maintenance of the schools for the next ensuing scholastic year," which must be paid "in full before the Board shall be authorized to borrow on the estimate of any succeeding year"; also provides that the money so borrowed may be used for paying "all outstanding warrants and all other legitimate expenses incurred in operating" the schools of the county.

It is observed that the maximum amount fixed by the statute that may be borrowed is 80% of the *estimate of the total amount required for meeting current expenses during the ensuing year,* and not 80% of the *anticipated revenues* that may be *actually collected.* This anomalous provision is partially remedied by Chapter 15779, Acts of 1931, so far as the amount of revenue "reasonably expected to be received" *from the state* is concerned, but this statute has no reference to revenues solely "derived from the County" as in the instant case. In fact, under said Section 566 the amount that may be borrowed, so far as the statute is con-

cerned, might be far in excess of the amount of taxes actually collected.

But assuming that the School Board exceeded its statutory authority in borrowing additional funds before the alleged $5,500.00 was repaid or that it exceeded the amount of taxes collected, which does not appear to be clear, the question then arises as to the effectiveness of the said validating act upon the obligation in this suit. Said validating act provides that:

"All outstanding county school warrants, notes and other evidences of debt made, issued and delivered by the Board of Public Instruction in any county in the state of Florida and duly signed by its Chairman, attested by its Secretary, for and in consideration of services performed as teacher, for labor performed and materials furnished in the construction of school buildings or additions thereto, furniture, equipment or supplies for the same, or *for money loaned to and received by such Board of Public Instruction for educational purposes and for interest of such loans* prior to May 21st, 1921, are hereby in all respects declared to be legal and binding obligations." (Italics ours.)

It must be noted that there are evidences of indebtedness that cannot legally be issued by a county school board; for example, in the case of State v. Board of Public Instruction of Indian River County, 98 Fla. 1152, 125 So. 357, this Court said:

"The Constitution contemplates an annual budget for County School expenditures and does not contemplate that interest-bearing time warrants or bonds shall be issued and sold to raise County School funds for the support and maintenance of public free schools."

The evidence of indebtedness in the instant case is not in effect a bond or interest-bearing time warrant. This

Court has made a distinction between "bonds or notes in the form of bonds, or in effect bonds" and that of current "obligations in the form of notes or similar evidences of indebtedness" which are intended to be paid out of "current revenues." See Board of Public Instruction Flagler County v. McKenzie, 103 Fla. 39, 136 So. 899.

In the case of the Board of Public Instruction of La-Fayette County v. Union School Furnishing Company, 100 Fla. 326, 129 So. 824, wherein the Complainant sought to reform certain notes which were irregularly executed, it was held that the notes executed by the Board "with interest coupons made payable in successive years after date" were not subject to reformation because they were equivalent to bonds, which are not authorized under Article XII, Sections 8 and 9, of the Constitution. That case also held that the Legislature could not make valid and binding an obligation of the County Board of Public Instruction "which it could not by its enactment authorize said Board to incur and execute in the first instance." See also Savage v. Board of Public Instruction, 101 Fla. 1362, 133 So. 341, also Board of Public Instruction of Flagler County v. McKenzie, 103 Fla. 39, 136 So. 899.

It was also held in the case of Weinberger v. Board of Public Instruction, 93 Fla. 470, 112 So. 253, that "the Legislature by a curative Statute may even validate bonds originally issued without authority, provided the Legislature could have authorized the issuance of the bonds in the first place." See also Nuveen v. Greer, 88 Fla. 249, 102 So. 739, 37 A. L. R. 1298; Charlotte Harbor & Northern Ry. Co. v. Wells, 78 Fla. 227, 82 So. 770; same, 260 U. S. 8, 43 S. Ct. Rep. 3, 67 L. Ed. 100. The latter case holds that "what the Legislature could have authorized, it can ratify, if it can authorize at the time of ratification."

The obligation here sued upon was made payable June 20, 1921, and the validating act became effective May 21, 1921, before the obligation became due. If the Legislature could have authorized the School Board to borrow the $10,000.00 here in question on May 21, 1921, notwithstanding the said $5,500.00 borrowed the previous school year may not have been repaid (for some reason legal or otherwise) then the validating act of May 21, 1921, was operative as to such obligations. The Constitution does not directly or impliedly prohibit such legislation, even though it inhibits the issuance of interest-bearing warrants or notes "which are in effect bonds." Board of Public Instruction v. Union School Furnishing Company, *supra*. The obligation here involved is not of that character, but is made payable out of current funds; therefore, we see no good reason for holding that these obligations were not validated under the said Acts of 1921. The fact that the interest added to the principal makes the judgment a very large incumbrance upon the county should not militate against the claim; the fact that it was not paid when due appears to have been no fault of the plaintiff; likewise, if the plaintiff was misled into making the loan upon the financial statement made by the Board at the time, the defendant is placed in a very poor position to claim advantage of it. A County School Board in its acts as a corporate body should be held in the same degree of integrity and liability as an individual and it applies as well to successors in office as to predecessors who created the obligation.

Having held that the Act of 1921 applies to and validates the outstanding note here in question we can see no useful purpose to be served by a discussion of the remaining assignments of error, for if the note was validated the re-

maining issues on this appeal become virtually a simple suit with the note as the cause of action, or bill of particulars.

The transcript shows that after all the evidence was received that was admissible, there was little if anything left for a jury to decide. It was undisputed that the money was borrowed from plaintiff and used for current school purposes.

It is also clear that if the note was validated by the Act of 1921, that the other issues raised by defendant's pleas to the declaration, not heretofore specially referred to, were eliminated.

Under our statutes, and former decisions of this Court, no judgment should be reversed for any error as to any matter of pleading or procedure unless in the opinion of this Court, after an examination of the entire case, it shall appear that the errors complained of have resulted in a miscarriage of justice. Sec. 4499, Compiled General Laws, 1927. Applying this rule we are not able to say that the errors complained of resulted in a miscarriage of justice.

Finding no reversal of error the judgment of the trial court is hereby affirmed.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and adjudged by the Court that the judgment of the court below be, and the same is hereby, affirmed.

BUFORD, C. J., and WHITFIELD, TERRELL, BROWN and DAVIS, J. J., concur.

ELLIS, J., dissents.

ELLIS, J. (dissenting).—There is no showing that the Board of Public Instruction in attempting to borrow money came within the provision of Sec. 566 C. G. L. It does not

appear that there was no money in the County School Fund
applicable to the payment of outstanding school warrants.
I think the validating act is not applicable and the venue
was improperly changed.

## On Rehearing Granted.

Davis, C. J.—This case was originally decided by this
Court on October 8, 1932. See foregoing opinion, 143 Sou.
Rep. 738: Owing to the pendency of other cases involving
kindred and related questions concerning the rights, duties,
obligations and burdens of Boards of Public Instruction,
when sued in an action at law to enforce a liability in debt
for the payment of money, a rehearing was granted and a
reargument ordered, especial reference being had to the
proposition just stated.

Since the reargument of this case, this Court has con-
sidered and decided the case of Board of Public Instruction
v. Kennedy (opinion filed March 21, 1932), 109 Fla. 153,
147 Sou. Rep. 250, wherein was reviewed and restated by
this Court, the legal liability of school boards in the
State of Florida, as well as the circumstances under which
recovery of judgments at law may be had against them as
a means of enforcing obligations by them incurred on lawful
contracts, or for lawful debts. What was said in that
opinion is all that is necessary to be again stated and reaf-
firmed by us in disposing of the present case on rehearing,
insofar as was involved in the present case the liability of
plaintiff in error, as a school board, to judgment in an action
at law.

The other propositions of law peculiar to this particular
case which were heretofore discussed and decided in the
former opinion filed in this suit on October 8, 1932, are
also reaffirmed on this rehearing.

So on the authority of the opinion heretofore filed herein, as that opinion stands modified by our latest opinion filed in the case of Board of Public Instruction of Okaloosa County v. Kennedy, *supra,* the judgment of the court below is hereby reaffirmed.

Judgment reaffirmed on rehearing.

WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.

ELLIS, J., dissents.